Alfredo **VARGAS, Individually and as Next Friend of Becky Vargas, Appellants,**

v.

**CITY OF SAN ANTONIO, et al., Appellees.**

**No. 16762.**

Court of Appeals of Texas, San Antonio.

March 30, 1983.

Rehearing Denied April 26, 1983.

178

Peter Torres, Jr., San Antonio, for appellants.

Steven W. Arronge, Baldemar A. Jimenez, Stephen Vangaasbeck, San Antonio, for appellees.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

This appeal arises out of a suit for damages caused by the premature destruction of a dog. Alfredo Vargas, individually and on behalf of his minor daughter, Becky Vargas, instituted proceedings against the City of San Antonio, Joseph Kail, director of the City's Animal Control Facility, Armando Vara and Ruby Leal, employees of the Animal Control Facility, and Juan Martinez, owner of the dog. Plaintiffs alleged that Becky Vargas was bitten by Martinez's dog, and that through the negligence of the City and its named employees, the dog was destroyed before the expiration of a required ten-day period of quarantine, thereby causing Becky Vargas to receive a series of rabies shots. A summary judgment was granted in favor of the City, and plaintiffs do not complain of that action on appeal. During the course of the bench trial, plaintiffs nonsuited defendants Leal and Martinez. Following the trial, the court entered a take-nothing judgment against plaintiffs.

Plaintiffs claim by their sole point of error that the trial court's judgment is contrary to the great weight and preponderance of the evidence. Because plaintiffs' assignment of error raises a question of factual sufficiency of the evidence, we must review all evidence in the record relevant to the issue of negligence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

On July 23, 1979, while visiting the Juan Martinez home with her mother, plaintiff Becky Vargas was bitten by a dog owned by Martinez. Becky's mother immediately called the family's doctor and the San Antonio Animal Control Facility (hereinafter Facility) to report the incident. Pursuant to instructions given to her by an unidentified Facility employee, Mrs. Vargas then called the police department and reported the dog bite. A police report recording Mrs. Vargas' complaint and dated July 23, 1979, was introduced into evidence without complaint. Later during the same day an employee of the Facility arrived at the Martinez home to bring the dog to the Facility. Both Martinez and his wife testified that the employee stated he had come "to pick up the dog that had bit someone." The Facility's "Animal Pickup Order" executed by the employee, however, lists the nature of the complaint as "one not wanted dog with five pups." Martinez's signature appears on the pickup order beside the statement, "Signatures Of Owner (For Humane Disposition)." Martinez testified that he did not tell the employee he wanted his dog destroyed, and that he signed the pickup order not knowing what he had signed.

The evidence establishes that the dog in question was euthanized by the Facility early in the morning on July 24, 1979. The police report concerning Mrs. Vargas' com-

plaint was picked up from the police station that same morning by Armando Vara and Eduardo Zamora, investigators for the Facility. The testimony established that when a police report indicates there has been a biting incident and the owner denies it, the Facility's general procedure is to quarantine the animal for the required ten-day period. Defendant Kail testified that the Facility generally attempts to recover a destroyed animal for laboratory analysis if it is discovered that the animal was destroyed before the expiration of the quarantine period. The evidence did not establish, however, whether the police report in the instant case was received by the Facility in time for the dog's brain to be retrieved for rabies testing.

Plaintiffs first learned of the dog's erroneous destruction on July 26, 1979, when they received a form letter from the Facility stating that the dog had been turned in as unwanted, and advising them to contact both a physician and the Facility. Dr. Courand Rothe, Director of the San Antonio Metropolitan Health District, testified that the form letter is not sent out unless there is reason to believe there has been a dog bite incident. Upon receipt of the form letter, Mrs. Vargas called the Facility and spoke with defendant Vara. Vara testified that after speaking with Mrs. Vargas he called Martinez, who said his dog did not bite Becky, but merely tore her slacks. Vara recorded Martinez's comments on the Facility's copy of the pickup order, and gave the order to Eduardo Zamora, the investigator assigned to the case. At trial, Martinez completely denied the occurrence of this conversation. On July 28, 1979, Becky began the series of twenty-three (23) rabies shots.

■ Section 6–35(a) of the San Antonio City Code provides in part,

Whenever a dog bites a person ... the owner of such dog or the person observing the incident shall immediately report, but in no instance to exceed twenty-four (24) hours, the incident to the police department. The police department shall forward all such reports to the director of public health for follow-up. The dog making the attack shall be placed under observation ... for a period of ten (10) days from the date of bite ... and held in the city animal shelter or a veterinary hospital....

This ordinance arises out of the City's police power because it is designed to secure the safety, health and welfare of the public. *See Hargrove v. City of Rotan,* 553 S.W.2d 246, 247 (Tex.Civ.App.—Eastland 1977, no writ). Although the City is protected from liability for failure to comply with the ordinance by the doctrine of governmental immunity, the individual or individuals responsible for the dog's destruction are not immune from liability for their own negligence. *See Hargrove v. City of Rotan, supra* at 248; *Eubanks v. Wood,* 304 S.W.2d 567, 570 (Tex.Civ.App.—Eastland 1957, writ ref'd n.r.e.).

■ Negligence has been defined as the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. *Dickson v. Weingarten, Inc.,* 498 S.W.2d 388, 391 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ).

■ There is no evidence in the instant case that defendant Vara committed any act or omission constituting negligence. The testimony established that Vara was not on duty on the day of the dog biting incident. Although he and Zamora picked up the police report from the police station on July 24, 1979, Vara testified that the case was assigned to Zamora for investigation. Vara further testified that he first learned of the biting incident when Mrs. Vargas called the Facility on July 26, 1979, and that he responded to her call only because he was the only investigator in the office at the time she called. Under these facts, we conclude that the trial court properly entered a take-nothing judgment as to Vara. We must still consider, however, whether the court erred in granting a take-nothing judgment in favor of defendant Kail.

Kail maintains the trial court's action was proper, and argues that the doctrine of *respondeat superior* cannot be used to hold him liable for the wrongful conduct of his subordinates. In support of this proposition Kail relies upon *Ratcliff v. Bruce,* 423 S.W.2d 614 (Tex.Civ.App.—Houston [14th Dist.] writ ref'd n.r.e.), *cert. denied,* 393 U.S. 848, 89 S.Ct. 134, 21 L.Ed.2d 118 (1968) and *Tumlinson v. City of Brownsville,* 178 S.W.2d 546 (Tex.Civ.App.—San Antonio 1944, writ ref'd). In *Tumlinson,* this Court held that the plaintiff's petition, which alleged failure to protect property from a fire, did not state a cause of action against the city manager. In reaching its decision, the Court relied upon the general rule that "public officers are not liable for the negligence of their subordinates unless they cooperate in the act complained of, or direct or encourage it." *Tumlinson v. City of Brownsville, supra* at 547.

Kail, the superintendent of the Animal Control Facility, was not directly involved in the pick up and destruction of the Martinez's dog. He was not made aware of this unfortunate incident until after the dog had been destroyed. It was then called to his attention that some child might have been bitten by this particular dog. Appellant claims that Kail, as supervisor of the employee who did destroy the dog, was negligent in failing to properly supervise his employees. The trial court held to the contrary. We have reviewed all of the evidence and we cannot say, "the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the findings should be set aside and a new trial ordered." *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

We affirm the judgment of the trial court.

TIJERINA, Justice, dissenting.

While I agree with the majority's decision regarding appellee Armando Vara, I cannot agree with that portion of the decision affirming the take-nothing judgment as to Joseph Kail, director of the City's Animal Control Facility. In the instant case the plaintiffs did not seek to hold Kail liable merely for the negligence of his employees. Plaintiffs' petition alleged, among other things, that Kail was negligent in failing to properly supervise and train his employees and in failing to maintain adequate safeguards against the premature destruction of biting dogs. Dr. Rothe testified that Kail was responsible for directing the day-to-day operations of the Facility. Rothe further testified that he directs Kail to enforce the provisions of both the State statutes and city ordinance which require a ten-day quarantine of dogs that the local health authority has probable cause to believe is rabid or has attacked an individual.

Kail testified that although a log book of complaints about biting dogs was kept by clerks at the Facility, he did not review the book each day to insure that the Facility would not destroy dogs that had reportedly bitten someone. He also stated that the Facility would honor an owner's wishes and euthanize a dog if the owner stated the dog had not bitten anyone in the preceding ten days. Kail acknowledged that in such cases it was possible for the Facility to receive a police report of a dog bite after the dog had already been destroyed. Kail also testified that police reports about biting incidents are generally picked up each morning, but that sometimes the reports are not picked up for two days. Finally, the testimony established that there is no definite procedure whereby the log book of complaints about biting dogs is checked against the paperwork on non-wanted dogs to insure that biting dogs are not killed before the expiration of the quarantine period.

The facts in this case lead me to conclude that the court's judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. Despite the provision in § 6–35 of the City Code allowing for a 24 hour period in which to report dog bites, Kail, with his responsibility as supervisor, neither instituted nor enforced any procedures whereby a dog would be kept long enough to determine if a biting complaint had been submitted to the police within the proscribed time period.

Given the importance of rabies control, and the fact that the ordinance in question is designed in part to protect the public from the type of injuries sustained by plaintiffs, *see* Tex.Rev.Civ.Stat.Ann. art. 4477–6a, § 102 (Vernon Supp.1982–1983), I can only conclude that Kail's failure to either institute or enforce such safeguards amounts to negligence. *See Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274 (Tex.1979); *cf.* Tex.Rev.Civ.Stat.Ann. art. 4477–6a, § 5.01 (Vernon Supp.1982–1983) (violation of animal quarantine requirement classified as Class C misdemeanor). For all of the foregoing reasons, I would sustain appellants' point of error as to appellee Kail.