**Robert WILLICH, Appellant**

v.

**Lydia DEASTADEAI, Appellee.**

No. 05-04-01481-CV.

Court of Appeals of Texas, Dallas.

Jan. 19, 2006.

Robert Willich, Plano, for Appellant.

Andrew L. Farkas, Andrew L. Farkas & Associates, Plano, for Appellee.

Before Justices MORRIS, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Lydia Deastadeai sued Robert Willich in the justice of the peace court for the return of her cat, Sweet Pea. The justice of the peace found in favor of Willich and ordered that the cat remain in the possession of Willich. Deastadeai appealed to the county court at law and after trial de novo, the county court judge ordered the cat returned to her. Willich appeals to this Court seeking the return of the cat. In five issues, he argues the evidence is insufficient to support the verdict, the trial court erred in allowing false testimony to be presented at trial, the trial court improperly allowed the pleadings to be amended, the City of Plano animal regulation code provision was ignored at trial, and the trial court erred in allowing a photo purportedly depicting Sweet Pea's mother into evidence at trial without proper authentication. Determining this Court does not have jurisdiction over this matter, we dismiss this appeal for want of jurisdiction.

Lydia Deastadeai took in a stray cat that became pregnant and gave birth to two kittens, one of whom she named Sweet Pea. When Sweet Pea was two and a half months old, she dug a hole in the backyard and wandered away. On finding her cat was missing, Deastadeai searched the vicinity, put up flyers, made phone calls and contacted many of her neighbors hoping to find him. She knocked on Willich's door

but no one answered. Willich's fence and property were described as being "catty cornered" to Deastadeai's property.

About one and a half months after the disappearance, Deastadeai and a friend were walking in the neighborhood, passed by Willich's house and saw Sweet Pea in the window. No one was home but Deastadeai returned later that night. She did not know Willich. Willich let her in his house and Deastadeai told him she thought he had her cat. Willich responded, "I hope you don't want him back because we've grown attached to him, and my grandson has grown attached to him." Deastadeai was allowed to hold Sweet Pea and believed he recognized her. Deastadeai pleaded with Willich to let her have Sweet Pea back. He refused saying she had allowed the cat to get outside, this violated the Plano City Code, and his grandson had grown attached to him. Deastadeai left the house without Sweet Pea. Deastadeai and her fiancee, Philip Steinhofer, made another attempt to get Sweet Pea back from Willich and went to his house and pleaded with Willich to return the cat to his rightful owner but Willich again refused. Deastadeai said she would reimburse Willich for any expenses he incurred in caring for Sweet Pea. She then asked the court to return Sweet Pea to her even though she had originally pleaded for fifty dollars. She did not want the money now.

Willich called his daughter Marjorie Willich as his first witness. She told the court the night they discovered Sweet Pea in their yard, she saw the "little black and white kitten" and thought one of her cats had escaped. The cat was wet and shivering. Marjorie took the cat inside and gave him water and cat food. She drove around the neighborhood to see if anyone was looking for the cat and spoke to one couple but ultimately found no one looking for a lost cat. After calling the pet hotline and the pound, she assumed the cat had been abandoned. Marjorie felt she had made a diligent effort to locate the Pea's owner. She took the cat to the veterinarian the following Tuesday, learned he was about five months old, had not been neutered and was suffering from a bit of a cold. Marjorie had the vet give him his shots. By this time, the Williches had named Sweet Pea "Biscuit." Marjorie told the court that several weeks after they found Biscuit, they decided to keep him and had him neutered and declawed.

Willich testified that Biscuit had wandered into his yard "wet, chilled and hungry." It was raining. Marjorie, his "adult daughter," dried the cat and fed it. It had a cough. Marjorie drove around the neighborhood but did not see any signs about a lost cat. After two months, Deastadeai "presented herself at my front door claiming that the stray was hers and demanding that I give it to her." Willich said he did not return the cat to Deastadeai when she asked him to because she had neglected him and failed to properly care for him. He testified that in the justice court Deastadeai had described her cat as being only black, not black and white as she was now claiming (the trial court denied a pretrial motion filed by Deastadeai asking for genetic testing). Willich also said that is was customary for people in Plano to put up signs for lost animals in sturdy text paper and Deastadeai said she only used regular paper clearly indicated a lack of real concern for Biscuit. The medical records from the veterinarian indicated Biscuit had indeed been neglected but was otherwise healthy. He had no fleas.

At the conclusion of the testimony, the county court judge found Deastadeai to be the original and primary owner and ordered the return of cat to be conducted

two days later at Deastadeai's attorney's office. He declined to order attorney's fees or to order Deastadeai to reimburse Willich for his expenses in caring for the cat. Willich's offer to pay $50 for the cat as originally plead was turned down by Deastadeai. Willich reurged his argument that his family had been with the cat for a year and a half and had "attachments" to the cat but the court stood firm in its ruling. Willich subsequently filed a motion for new trial and a hearing was held on the motion during which attorneys for both sides presented argument. The motion was denied and Willich then filed a motion for emergency stay and ultimately this appeal.

The "Statement of Claim" in the justice court reflects Deastadeai sought $50 in damages and the "Transcript of Judgment" recites the case as being a "Suit Upon Return of Lost Cat $80" and "Judgment for Defendant." The pleadings in the county court at law valued the cat at $50; the judgment of the county court references only "the feline."

Section 22.220(a) of the government code provides, "Each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $100, exclusive of interest and costs." TEX. GOV'T CODE ANN. § 22.220(a)(Vernon 1988). The amount in controversy being below the minimum required to invoke the jurisdiction of this Court, this appeal is DISMISSED for want of jurisdiction.