**Reversed and Remanded and Opinion filed August 26, 2014.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-13-00240-CV

---

### GREATER HOUSTON GERMAN SHEPHERD DOG RESCUE, INC., Appellant

### V.

### LYDIA LIRA AND ALFONSO LIRA, Appellees

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-03944**

---

### O P I N I O N

A German Shepherd dog owned by appellee Alfonso Lira and his sister, appellee Lydia Lira, escaped through an open garage door of the home they occupied.  BARC, the City of Houston's animal control agency,[1] found and impounded the dog.  When no one had appeared to claim the dog within the time

---

[1] BARC was formerly known as the Bureau of Animal Regulation and Care.

specified by City ordinance, BARC transferred the dog to appellant, Greater Houston German Shepherd Dog Rescue, Inc. The Liras learned the dog was in appellant's possession, and they asked appellant to turn the dog over to them. Appellant refused, and the Liras filed this suit to recover possession of the dog. Following a two-day bench trial, the trial court signed a final judgment ordering appellant to turn over possession of the dog to the Liras. Appellant appealed.

Because the Liras did not comply with the exclusive procedures established by City ordinance for the redemption of an impounded dog, we conclude the Liras may not recover possession of the dog from appellant. We therefore hold the trial court erred when it ordered appellant to turn the dog over to the Liras. We reverse the judgment of the trial court, render judgment that appellees take nothing, and remand to the trial court for further proceedings consistent with this opinion, including an appropriate order restoring possession of the dog to appellant.

## BACKGROUND

On January 2, 2013, BARC impounded the dog when it was found running at large within the City in violation of City ordinance. The dog was not wearing a City dog license or a rabies tag, which are required by state and local law.[2] The dog also did not have an identification tag or microchip.

Once the dog was in BARC's custody, it was photographed and then listed on a website for lost animals. The BARC veterinary staff also performed a medical evaluation of the dog and determined that it had not been sterilized. As

---

[2] *See* Tex. Health & Safety Code Ann. §§ 826.022 (West 2010) (making failure to have dog vaccinated against rabies a criminal offense); 826.031 (authorizing local governmental authority to adopt rules or ordinances requiring owners to register dogs with authority); *see also* Houston, Tex. Code of Ordinances, ch. 6, art. IV, § 6-86 (2014) (requiring dog owners to obtain a city license, one of the requirements of which is that the dog has been vaccinated against rabies), § 6-87 (requiring that City license be worn by dog at all times).

part of the evaluation, the staff tested the dog for heartworms and received a "weak positive" result. In light of this result, BARC scheduled the dog to be euthanized on January 7.

BARC is open seven days per week for owners to search for their lost pets. The Liras did not redeem the dog from BARC within the first three days of the dog's impoundment, which ended on January 5. The Liras also did not redeem the dog between January 5 and January 7, when it was scheduled to be euthanized.[3]

When no one had appeared to redeem the dog during the first three days of impoundment, BARC sent out a plea to local rescue organizations inquiring if any of the organizations were willing to accept the dog, provide it with medical treatment for heartworms, and once healthy, find a permanent home for it. Appellant responded to the plea and placed a rescue hold on the dog so it would not be euthanized.

On January 7—the fifth day BARC had held the dog and the day it had been scheduled to be euthanized—a volunteer for appellant went to BARC to pick up the dog. BARC transferred the dog to appellant on the condition that appellant have it sterilized in compliance with state and local laws. Appellant's volunteer took the dog immediately to a veterinary clinic for it to be evaluated, sterilized, and treated for heartworms. The veterinary clinic sterilized the dog and implanted an identification microchip the next day.

On January 9, 2013, after learning from a BARC employee what had happened to the dog, Lydia Lira called appellant and told the volunteer that the dog

---

[3] The Liras offered evidence at trial that they searched the website for their dog during this period but did not find it, and that they later learned the dog had been listed on the website under the wrong breed. But the trial court did not make specific findings regarding the Liras' actions between January 2 and January 7, and in any event this issue does not affect our disposition of the appeal.

3

was hers and that it had escaped from her home. Lydia asked appellant to transfer the dog to her. The volunteer refused, telling Lydia that the dog was no longer the Liras' dog. The Liras and their representatives made additional contacts asking appellant to transfer the dog to them. Appellant refused each request.

The Liras then filed suit against appellant, alleging numerous causes of action. The City of Houston and BARC are not parties to the suit. After a two-day bench trial, the court found in favor of the Liras. The trial court then signed findings of fact and conclusions of law, as well as a final judgment, in favor of the Liras on their conversion cause of action and their requests for declaratory and injunctive relief. Among the court's conclusions were that (1) "no state or local laws operated to divest [the Liras] of their ownership rights in the subject dog," and (2) appellant had converted the Liras' personal property. The final judgment included a permanent injunction ordering appellant to turn the dog over to the Liras on February 27, 2013. This appeal followed.

### ANALYSIS

Appellant brings two issues on appeal challenging the trial court's final judgment. Its issues challenge the court's conclusion that no laws operated to divest the Liras of their ownership rights, as well as the court's judgment in favor of the Liras on their conversion cause of action and their requests for declaratory and injunctive relief. We address these issues together.

## I.     Standard of review

A trial court's unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the findings. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). In this appeal, no party challenges any of the trial court's findings of fact, and the relevant

4

facts are not disputed.

Instead, appellant challenges the trial court's legal conclusion that "no state or local laws operated to divest [the Liras] of their ownership rights in the subject dog." Appellant then argues that because state and local laws did divest the Liras of their ownership rights in the dog when (1) the dog was impounded by BARC when it was found running at large within the city limits in violation of City ordinance, and (2) the Liras did not redeem the dog while it was in BARC's possession, the trial court erred when it ordered it to turn over possession of the dog to the Liras. Appellant and its *amici* also contend that the trial court's ruling allowing shelters that accept dogs from BARC to be sued for conversion will chill shelters from rescuing such dogs and increase the euthanasia rate dramatically. Other *amici* urge, however, that applying the ordinance to cut off the Liras' rights in this dog will jeopardize not only many beloved pets, but also necessary service animals.

We review the trial court's conclusions of law de novo. *Smith v. Smith,* 22 S.W.3d 140, 143–44 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Under this standard, the reviewing court exercises its own judgment and re-determines each legal issue. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow,* 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ). Erroneous conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

To resolve this appeal, we must construe statutes and city ordinances to determine whether the trial court correctly concluded that no state or local laws divested the Liras of their ownership of the dog. The same rules that govern

5

statutory construction apply to the construction of municipal ordinances. *Seawall E. Townhomes Ass'n, Inc. v. City of Galveston,* 879 S.W.2d 363, 364 (Tex. App.—Houston [14th Dist.] 1994, no writ). Our primary objective is to give effect to the enacting body's intent. *Id.*; *see TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011). When construing an ordinance, we must presume the ordinance is intended to be effective, a just and reasonable result is intended, a result feasible of execution is intended, and the public interest is favored over private interest. *See Edwards v. City of Tomball*, 343 S.W.3d 213, 221 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The most reliable expression of the intent of an ordinance is the literal text of the provision. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex. 2006). When construing an ordinance, we presume that the language of the ordinance was selected with care and that every word and phrase was used for a purpose. *See Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010). Where possible, we avoid treating any language as surplusage. *Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex. 2000). In addition, a court must consider the ordinance as a whole rather than its isolated parts. *See Edwards*, 343 S.W.3d at 221. If an ordinance contains undefined terms, we typically use the terms' ordinary meaning. *See TGS–NOPEC,* 340 S.W.3d at 439.

## II. Dogs are personal property subject to regulation under the government's police power.

"Throughout the Lone Star State, canine companions are treated—and treasured— . . . as beloved friends and confidants, even family members." *Strickland v. Medlen*, 397 S.W.3d 184, 185 (Tex. 2013). While acknowledging the family grief associated with the loss of a pet dog, the Supreme Court of Texas recently reaffirmed that dogs are personal property. *Id.* at 185. The Legislature has concluded that dogs may also present a threat to public health, safety, and

6

welfare, and it has authorized local governmental authorities to adopt rules to address this threat. *E.g.* Tex. Health & Safety Code Ann. §§ 826.022 (making failure to have dog vaccinated against rabies a criminal offense); 826.031 (authorizing local governmental authority to adopt rules or ordinances requiring owners to register dogs with authority); 826.033 (authorizing local governmental authority to adopt rules or ordinances (1) requiring owners to restrain dogs, (2) declaring stray dogs a public nuisance, and (3) authorizing impoundment and humane disposition of unclaimed stray dogs).

When a city's rules regarding the ownership, possession, and control of dogs are designed to protect the health, safety, and welfare of the public, courts have concluded that they are a proper exercise of the city's police power. *Leibowitz v. City of Mineola*, 660 F.Supp.2d 775, 784 (E. D. Tex. 2009); *Vargas v. City of San Antonio*, 650 S.W.2d 177, 179 (Tex. App.—San Antonio 1983, writ dism'd). City ordinances providing for the summary sale or destruction of dogs found running at large have been held valid exercises of the police power even though they allow an owner to be deprived of personal property without notice or hearing. *Jenkins v. City of Waxahachie*, 392 S.W.2d 482, 484 (Tex. Civ. App.—Waco 1965, writ ref'd n.r.e.); *see Vargas*, 650 S.W.2d at 179 (recognizing, in case involving erroneous destruction of dog, that city ordinance providing for impoundment of dog suspected of biting person was valid exercise of city's police power).

The Liras have not sued the City of Houston or challenged the ordinances at issue here. Thus, the question whether the ordinances' procedures for redeeming, transferring, or destroying impounded dogs represent an appropriate exercise of the police power is not before us. Although some of the briefs submitted in this case address questions such as whether the ordinances are well drafted and represent sound policy, as well as whether the parties' conduct here was good or bad as

measured by prevailing social norms, those questions are not for this Court to decide. Our task is to determine whether the trial court interpreted and applied the text of the ordinances correctly in deciding the Liras' claims.[4]

## III. Houston exercised its police power to provide for humane disposition of unhealthy dogs, including by transfer to a non-profit humane shelter.

As authorized by the state statutes cited above, the City of Houston adopted ordinances regarding the impoundment of stray dogs and the subsequent humane disposition of those dogs. The ordinances have recently been amended, but we apply the ordinances in effect at the time of the events at issue. Under the ordinances, it is unlawful for a dog to run at large within the city limits. Houston, Tex. Code of Ordinances, ch. 6, art. IV, § 6-101 (2014). The ordinances empower animal control officers to impound dogs they find running at large and to take those dogs to the animal control center (BARC), where they will be impounded for a period of three days. *Id.* § 6-102(a).[5]

If the dog is not redeemed during the required three-day impoundment period, the City is required to dispose of the dog humanely. *Id.* § 6-138. The authorized methods of disposition include euthanasia, sale of the dog by BARC if it is healthy, adoption of the dog through BARC if it has been vaccinated and sterilized, or placement of the dog for adoption through a "private nonprofit humane shelter." *Id.* §§ 6-137(b), 6-138. The ordinances do not define the term "humane shelter."

---

[4] In addition to the parties' briefs, many thoughtful and passionate *amicus* briefs were submitted in this case. These briefs illustrate the strong competing policy considerations on both sides of the issues presented. The Court thanks the *amici* for their assistance.

[5] If the dog is wearing a license tag or has a microchip or other identification, BARC is required to notify the owner and impound the dog for six days. *Id.* § 6-102(b).

The City is required to offer for sale healthy dogs that have not been redeemed by their owners within the three-day impoundment period. *Id.* § 6-137(b). The ordinances do not define "healthy dog." The BARC representative testified at trial that BARC does not consider heartworm-positive dogs to be healthy dogs that can be sold to the public. BARC may, however, transfer a heartworm-positive dog to a "humane shelter" for adoption. *Id.* § 6-138(2). BARC places heartworm-positive dogs with rescue organizations to reduce the number of dogs it must euthanize.

City ordinances also create the exclusive procedure for an owner of a dog impounded by BARC to redeem the dog and make clear that this procedure may not be circumvented by other means, such as by purchasing the dog. *See id.* § 6-137(d) ("The owners of all animals impounded in the animal control center shall be required to redeem the same as provided for in subsection (a) hereof and shall not be permitted to purchase such animal in lieu of paying the redemption fee"). To redeem an impounded dog under the ordinances, "[t]he person entitled to the possession of" the dog must present satisfactory evidence of ownership, pay an impoundment fee, purchase a city license for the dog, pay the daily boarding fee set by the City fee schedule, pay a rabies vaccination fee if the dog has not previously been vaccinated, pay reasonable expenses incurred in treating any medical conditions the dog had when impounded, and, finally, sign an agreement to sterilize the dog if it was not previously sterilized. *Id.* at § 6-137(a), (g).

These ordinances explicitly limit the right of an owner to regain possession of an impounded dog. Mere ownership is not sufficient to secure the return of the dog. Even if the owner timely provides evidence of ownership, the ordinances do not permit redemption of the dog unless the other criteria are also satisfied.

9

**IV. Because the Liras did not redeem the impounded dog in compliance with the timeline and procedures established by the City's ordinances, they may not recover possession of the dog from appellant.**

These ordinances frame our review of the trial court's judgment. The Liras alleged and the trial court concluded that appellant converted the dog. Based on this conclusion, the trial court issued a permanent injunction ordering appellant to turn over possession of the dog to the Liras. Appellant contends the trial court erred when it made this conclusion because the Liras did not redeem the dog under the ordinances and BARC transferred possession of the dog to it. We agree.

In order to establish conversion of personal property, a plaintiff must prove that (1) it owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.). Therefore, the Liras had to establish that they were legally entitled to possess the dog at the time BARC transferred possession of the dog to appellant. *Id.* Given the trial court's factual findings and the language of the ordinances, we conclude the Liras failed to establish this required element.

The trial court found that the dog was impounded by BARC when it was found running at large—a violation of the city ordinance. *See* Houston, Tex. Code of Ordinances ch. 6, art. IV, § 6-101. The court also found that the dog was held for longer than the required three-day impoundment period. *See id.* § 6-102(a). In addition, the timeline established by the trial court's findings of fact, unchallenged here, shows that the Liras did not redeem the dog pursuant to the exclusive

10

procedure established by the City.[6] *See id.* § 6-137(a), (g). There is also evidence that, had BARC still retained possession of the dog when the Liras attempted to reclaim him, the Liras would not have complied with the redemption procedure. Ms. Lira testified she would not have agreed to sterilize the dog. In addition, the trial court found that she "requested the dog not be neutered." Although the dog tested positive for heartworms, the trial court also found that the Liras requested that no "other medical procedures [be] done to him."

The trial court found that the dog tested positive for heartworms and had not been sterilized, so the only humane disposition options available to BARC under the ordinances were euthanasia or placement for adoption through a humane shelter. *Id.* § 6-138(2), (4). The trial court found that BARC had scheduled the dog to be destroyed on January 7, 2013. Rather than destroy the dog, however, BARC transferred the dog to appellant. In return, appellant agreed it would (1) sterilize the dog, (2) treat it for heartworms, and (3) once the dog was healthy, locate a new home for it.

Because the Liras did not redeem the dog in compliance with the City's exclusive procedure, we hold they were not legally entitled to possess the dog when BARC made its ordinance-mandated choice between humanely destroying the dog or transferring it to a non-profit humane shelter. Accordingly, they failed to establish an essential element of their conversion claim. In reaching this conclusion, we reject the Liras' contention that the ordinances do not give BARC the authority to terminate their possessory interest in the dog at the end of the

---

[6] The trial court did not include any findings addressing redemption as a ground for the Liras to recover the dog. Instead, the trial court's conclusions rested upon ownership of the dog. Moreover, as we discuss, the timeline findings made by the trial court could not support redemption as a basis for the judgment. Therefore, we do not presume such redemption findings. *See Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 648 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

11

impoundment period. *See id.* §§ 6-137(b) (authorizing sale), 6-138 (authorizing adoption or euthanasia). Indeed, the Liras conceded during trial that BARC could lawfully euthanize the dog after the required three-day impoundment period, thus destroying their personal property. Moreover, a contrary conclusion that the Liras may recover their dog from appellant would nullify the ordinance sections creating an exclusive procedure for redeeming the dog and prohibiting owners from circumventing that procedure. *Id.* § 6-137(a), (d). This we decline to do. *Spradlin*, 34 S.W.3d at 580.

The Liras cannot and do not argue that they complied with the ordinances' exclusive redemption procedure. Instead, faced with undisputed noncompliance, the Liras implicitly ask this Court to craft a "diligence" exception to the procedure. The trial court found that the Liras diligently attempted to find the dog, but that finding is immaterial under the ordinances. The ordinances, as written, provide bright deadlines and specific requirements for redemption without exception for diligence. As noted above, the Liras did not sue the City to challenge the ordinance, so the only task before us is to apply the ordinance as written.

Because the Liras did not have the right to possess the dog when BARC transferred it to appellant, we hold the trial court erred when it (1) concluded that the Liras had never abandoned or relinquished ownership of the dog, (2) concluded that appellant had converted the dog, and (3) ordered appellant to turn over possession of the dog to the Liras.

The Liras make several other arguments against our holding, but we conclude that none require a different result. First, the Liras assert that appellant impounded the dog and cite numerous cases they contend compel this Court to affirm the trial court's permanent injunction. But in this case it was BARC that impounded the dog, not appellant. This is a crucial fact because none of the cases

12

cited by the Liras involve the scenario we are presented with here: a dog that is first impounded by a municipality when found illegally running at large and later turned over to a humane shelter in lieu of euthanasia. Instead, the cases cited by the Liras involved situations in which a private citizen or organization that lacked police power obtained possession of an animal without the animal first being impounded by a governmental authority. *E.g.*, *Augillard*, 257 S.W.3d at 503 (ordering return of dog lost during Hurricane Katrina that rescue organization had placed for adoption with third party); *Willich v. Deastadeai*, 183 S.W.3d 92, 93–94 (Tex. App.—Dallas 2006, no pet.) (trial court had ordered private citizen to return cat to owner); *Kieschnick v. State*, 911 S.W.2d 156, 157–59 (Tex. App.—Waco 1995, no pet.) (private citizen convicted of theft for refusing to return dogs lost by owner and obtained by citizen from a veterinarian). Because the cases cited by the Liras do not address the factual scenario presented here, we conclude they do not impact the outcome of this appeal.

Next, the Liras contend the trial court's judgment must be affirmed because BARC could not lawfully transfer the dog to appellant, which was not a recognized rescue partner with the City and did not operate a physical kennel structure. *See Dill v. Graham,* 530 S.W.2d 157, 160 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.) ("one may convert personal property by receiving it pursuant to a transfer made without authority"). We disagree with both contentions. While it is true no signed contract between the City and appellant was admitted into evidence, there was undisputed testimony by a BARC representative that the City and appellant had an agreement in place making appellant a rescue partner with BARC at the time BARC transferred the dog to appellant.[7] In addition, the term "humane

---

[7] The trial court did not make any finding regarding appellant's status as a rescue partner or a humane shelter. We cannot presume a finding that appellant was not a rescue partner or humane shelter because, as discussed above, the evidence would not support it. *See Foley*, 383

13

shelter" is not defined in the City's ordinances, and the Liras have not cited any authority requiring that a humane shelter must operate from a physical kennel structure rather than through a system of foster homes for animals received from BARC.

Finally, the Liras contend section 6-137(b) of the city ordinances enabled them to redeem the dog from appellant. They go on to argue they made a timely effort to redeem the dog from appellant and therefore fall within the redemption ordinance. Because we conclude that the additional 30-day redemption period provided by section 6-137(b) does not apply to the facts of this case, we disagree.

Section 6-137(b) provides:

> It shall be the duty of the officer in charge of [BARC] to offer for sale any and all healthy animals impounded under the terms of section 6-102 and not redeemed within three days, and to sell the same for cash for the amount of the accrued fees against such animal. The person entitled to the possession of any animal shall be entitled to redeem the same upon paying the purchaser double the amount paid by him for such animal and his reasonable expenses for keeping the same. Any animal not so redeemed within 30 days from the date of the sale shall become the absolute property of the purchaser.

Houston, Tex. Code of Ordinances ch. 6, art. IV, § 6-137(b).

Although this provision creates an additional redemption period after a dog leaves BARC, its language makes clear that only a dog *sold* by BARC may be redeemed from the purchaser within 30 days of sale. The Liras' broader construction ignores the ordinance's use of the terms "offer for sale" and "date of the sale," as well as the requirement that the redeeming owner pay the "purchaser" of the animal double the amount the "purchaser" paid for the animal as well as the expenses incurred in keeping the animal. *See id.* The Liras' argument that they

S.W.3d at 648.

14

fall within the 30-day redemption period also ignores the existence of section 6-138, which creates a scheme for the "disposal of impounded dogs, cats, [or] other animals *not* redeemed or *sold*" and authorizes the transfer of animals to humane shelters as an alternative to euthanasia. *Id.* § 6-138 (emphasis added).

In the present case, the trial court did not determine that BARC sold the dog to appellant. Instead, the court found that BARC "released" the dog to appellant in lieu of euthanasia without appellant paying any type of fee to BARC. *See id.* § 6-138(2). Because there was no sale of the dog, the additional 30-day redemption period found in section 6-137(b) was not applicable, and that period cannot support the trial court's judgment ordering appellant to return the dog to the Liras. In addition, the fact that BARC's pet adoption agreement quotes language from the redemption ordinance cannot support the judgment because appellant did not adopt the dog and there is no evidence in the record indicating that an adoption agreement covering the dog was ever signed.

We emphasize that, as the Liras have framed their lawsuit, our holding is necessarily a narrow one. Rather than challenging the City's right to deprive them of possession under the ordinances, the Liras sought to recover possession of the dog as well as damages from appellant in a tort action for conversion. As such, the Liras undertook the burden, in the first instance, to demonstrate a superior right to possess the dog under the ordinances.[8]

In sum, applying the law to the trial court's factual findings establishes that (1) the Liras did not follow the ordinances' exclusive procedure to redeem the dog

---

[8] To decide this case, we need go no further than determining whether the Liras had a superior right to possess the dog. The ordinances at issue address possession and ownership rights solely in terms of redemption. Moreover, the Liras' conversion claim depends upon a superior right to possession. Given how the Liras' pleadings and the trial court's findings and conclusions have framed the case, we need not address the parties' remaining arguments regarding whether and in what circumstances the ordinances terminate ownership of a dog.

15

from BARC, and (2) the Liras were not entitled to redeem the dog from appellant under the ordinances. Because the Liras did not demonstrate they were entitled to possession of the dog, the trial court erred when it concluded appellant had converted the dog and granted declaratory and injunctive relief that the Liras were entitled to possession. We sustain appellant's consolidated issue on appeal.

## CONCLUSION

Having sustained appellant's consolidated issue on appeal, we reverse the judgment of the trial court, render judgment that appellees take nothing, and remand the case to the trial court for further proceedings consistent with this opinion, including an appropriate order restoring possession of the dog to appellant.


/s/        J. Brett Busby
              Justice

Panel consists of Justices McCally, Busby, and Donovan.