

# NUMBER 13-13-00511-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MICHAEL W. STAGGS,**                                                                  **Appellant,**

**v.**

**THOMAS SIMPER AND DEBBIE SIMPER,**                                    **Appellees.**

---

### On appeal from the 25th District Court
### of Lavaca County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Michael W. Staggs appeals from a judgment rendered by the 25th District Court of Lavaca County, Texas, in favor of Debbie Simper. The jury found Staggs liable on Debbie's claim of intentional infliction of emotional distress and awarded her damages of $10,000. The jury did not find Debbie or co-appellee Thomas Simper liable

on Staggs's claims of conversion, negligence, and gross negligence. Staggs raises five issues on appeal challenging the legal and factual sufficiency of the jury's findings. We reverse and render, in part, and affirm, in part.

## I. BACKGROUND[1]

This case arises out of the shooting of Staggs's mixed Alaskan Malamute-Timberwolf dog, Cheyenne. The undisputed facts in this case are as follows: Thomas shot Cheyenne in the head three times at close range while Cheyenne was tied up on his property. As a result of Cheyenne's death, Staggs brought suit against the Simpers alleging conversion, negligence, gross negligence, and intentional infliction of emotional distress. The Simpers counter-claimed against Staggs for assault, conversion, negligence, gross negligence, and intentional infliction of emotional distress.[2]

After the close of evidence both Staggs and the Simpers submitted jury questions for conversion, negligence, gross negligence, and intentional infliction of emotional distress.[3] The jury did not find for Staggs on his claims against the Simpers. It also found against the Simpers on all of their claims against Staggs except on Debbie's intentional infliction of emotional distress claim.[4] The jury awarded Debbie $10,000 as damages to compensate her for her emotional distress.

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] The Simpers' counter-claim was for damages arising out of the death of their dog, Puppy, and subsequent events, addressed below.

[3] Essentially, each question was submitted twice: once as to the Simpers and once as to Staggs. The Simpers also asserted a claim for assault against Staggs.

[4] The Simpers did not file an appellees' brief and did not file a cross-appeal.

Staggs now challenges the legal sufficiency of the jury's finding that he intentionally inflicted emotional distress on Debbie and the factual sufficiency of the evidence supporting the jury's "no" answer to his causes of action for conversion, negligence, and gross negligence.

## II.     STANDARD OF REVIEW

### A.     Legal-sufficiency standard

In reviewing the legal sufficiency of the evidence, we must consider the evidence in the light most favorable to the fact-finder's decision and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. A legal-sufficiency review, in the proper light, must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; we may not impose our own opinion to the contrary. *Id.* at 819. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict if reasonable human beings could do so. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be sustained when "(a) there is a complete absence

3

of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotations omitted).

### B. Factual-sufficiency standard

In a factual-sufficiency review, we must examine both the evidence supporting and contrary to the judgment. *See City of Keller*, 168 S.W.3d at 822; *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Here, too, the jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; we may not impose our own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. After considering and weighing all of the evidence, we can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

### III. STAGGS'S LEGAL SUFFICIENCY CHALLENGE TO THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FINDING

In his first issue, Staggs asserts that the evidence was legally insufficient to support a finding that he intentionally inflicted emotional distress on Debbie because there was

no evidence to support two elements of her cause of action, i.e., that his conduct was outrageous and that Debbie suffered severe distress as a result of such conduct.

## A.    Intentional Infliction of Emotional Distress Law

To prevail on a claim for the intentional infliction of emotional distress, Debbie had to prove by a preponderance of the evidence that:  (1) Staggs acted intentionally or recklessly; (2) his conduct was extreme and outrageous; (3) his actions caused her emotional distress; and (4) the emotional distress was severe.  *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004); *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003) (per curiam).  Staggs's conduct satisfies the second element only if his conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt.d (1965)).

Conduct that is merely insensitive or rude is not extreme and outrageous, nor are "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999).  Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous.  *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 n.1 (Tex. 2005) (noting cases in which intentional infliction of emotional distress claims were reversed for "failing to meet the exacting requirements of that tort").

Because Staggs is challenging an adverse finding on which he did not bear the

burden of proof, he must establish that there was no evidence to support the jury's finding. *See Croucher*, 660 S.W.2d at 58. We review all evidence in support of the jury's verdict and disregard all contrary evidence unless it would be unreasonable to do so. *See City of Keller,* 168 S.W.3d at 822.

### B. The Credible Facts Supporting the Verdict

This is a classic "he said/she said" case in which the jury was presented with two versions of the events that culminated in the death of Cheyenne. Witnesses for the Simpers testified that Cheyenne was an aggressive dog that regularly roamed the neighborhood and that had a propensity for attacking other neighborhood dogs. Debbie testified that on November 15, 2007, she heard a dog barking in her yard. She went outside to investigate and saw two of Staggs's "wolf dogs" attacking Puppy, her pit bull. Once outside Debbie saw Puppy crawl out from underneath a trailer. Puppy had puncture wounds all over her body, and Debbie suspected internal bleeding. Debbie called Thomas and asked him to come home.

While waiting for Thomas to arrive, Cheyenne and another dog belonging to Staggs continued to make aggressive moves toward her and Puppy. When Thomas arrived, he determined that Puppy needed to be put down and shot her. Thomas then approached Cheyenne who was snarling at him and attempting to attack his miniature horses. He determined that she was unsafe to set loose and shot her three times in the head at close range.

When Staggs got home and found Cheyenne missing, he went to the Simpers's residence to ask if they had seen her. Thomas told Staggs that he had shot Cheyenne

6

because she attacked his dog.   Staggs's response was that "someone's going to die for this."   When Thomas asked Staggs if that was a threat, Staggs said "no, no, no" and left the property.

The Simpers testified that they feared Staggs.   According to Thomas, Staggs repeatedly shot towards their property.[5]   On one occasion Staggs shot over Thomas's head—between his raised hands.   Thomas "felt the bullet go by."   Debbie testified that, years after the incident, Staggs drove by their new home in Yoakum.   She also testified that Staggs had a reputation for drinking excessively.

Evidence was introduced at trial by both sides that Staggs believed that the Simpers were engaged in dog fighting and that Cheyenne's death stemmed from their involvement in dog fighting.   Staggs shared these beliefs with the local police department and other law enforcement agencies, in addition to performing or attempting to perform his own investigation into Cheyenne's death and the existence of a local dog fighting ring.

## C.    Analysis

Staggs contends that there is no evidence that his conduct rose to the level of "outrageous" that the Texas Supreme Court requires to support a finding on a claim for the intentional infliction of emotional distress.   *See King Ranch,* 118 S.W.3d at 751; *Tywman,* 855 S.W.2d at 621.   Staggs further contends that Debbie's own testimony conclusively establishes the opposite of a vital fact—i.e., that her emotional distress was severe.   *See King Ranch,* 118 S.W.3d at 751; *Tywman,* 855 S.W.2d at 621.

Looking at the facts in the light most favorable to the jury's decision and indulging

---

[5] Staggs had a DPS certified gun range on his property.

every inference to support it, we cannot conclude that the evidence at trial enabled reasonable and fair minded jurors to reach the determination that Staggs intentionally inflicted emotional distress on Debbie.[6]  *See City of Keller,* 168 S.W.3d at 822; *Tywman,* 855 S.W.2d at 621.  There is no evidence in the record that any intentional action by Staggs was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Twyman,* 855 S.W.2d at 621.

There is evidence that Staggs threatened the Simpers after Thomas told Staggs he had shot Cheyenne—Staggs allegedly said that "someone's going to die for this." However, the jury did not credit the above statement as reflected in a separate jury question where the jury found that Staggs did not "intentionally or knowingly" cause injury through the infliction of emotional distress by threatening the Simpers.[7]  Additionally, even if the jury's "no" answer had not illuminated this issue for us, the comment allegedly made by Staggs, and followed promptly with his assertion that it was not a threat, does not reach the egregious level required by *Twyman* and *GTE Southwest, Inc. See Twyman,* 855 S.W.2d at 621; *GTE Sw., Inc.,* 998 S.W.2d at 612 (stating that conduct that is a mere threat is not extreme and outrageous).

It is also apparent from the record that Debbie based her cause of action for

---

[6] It is important to note that Thomas's claim that Staggs shot over his head is not evidence that could support Debbie's claim for emotional distress because there is no evidence that Debbie was present when the alleged incident occurred.

[7] The trial court submitted the following question to the jury on the Simpers's assault claim:  "Do you find from the evidence in this case that MICHAEL W. STAGGS threatened THOMAS & DEBBIE SIMPER with imminent bodily injury which threat caused injury through the infliction of emotional distress." The jury answered "no."  We do not address the correctness of the charge.

8

intentional infliction of emotional distress on the death of her dog Puppy.  At one point, counsel for the Simpers asked Debbie the following question: "[b]ased on Mr. Staggs allowing his dogs to roam free and maul your dog, has that caused you some emotional distress?"  Debbie testified that it caused her "a lot of distress," namely that the court proceedings were distressing, and that allegations that she was involved in dog fighting were distressing.  These facts will not support a finding for intentional infliction of emotional distress.  *Twyman,* 855 S.W.2d at 621; *GTE Sw., Inc.,* 998 S.W.2d at 612.  Moreover, none of the facts allege an intentional act by Staggs.  *See id.*  While the jury may have believed Debbie's testimony that having Puppy dying in her arms was distressing, it is not the atrocious and intentional action required by Texas courts to support the limited cause of action for the intentional infliction of emotional distress.  *See id.*

The intentional infliction of emotional distress finding also fails on a second basis. Debbie's own testimony conclusively negated an element of her cause of action.  *See King Ranch, Inc.,* 118 S.W.3d at 751.  Debbie's testimony establishes that there is no evidence that she suffered severe emotional distress. *See id; Hoffman-La Roche Inc.,* 144 S.W.3d at 445.  "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.  *See Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.—Corpus Christi 1992, writ denied); *K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex. App.—San Antonio 1991, writ denied).

During cross-examination, counsel for Staggs asked Debbie whether she ever

9

sought counseling as a result of her emotional distress. Debbie responded that she did not seek counseling because "[the distress] wasn't that severe." Debbie's testimony that her emotional distress was not severe enough to warrant counselling conclusively establishes that her intentional infliction of emotional distress claim is not meritorious. See *Benavides*, 848 S.W.2d at 195; *K.B.*, 811 S.W.2d at 640.

Considering the evidence in the light most favorable to the jury's decision and indulging every reasonable inference that would support it, we nonetheless cannot conclude that Staggs's conduct was extreme and outrageous, and we cannot conclude that Debbie suffered severe emotional distress. *See City of Keller,* 168 S.W.3d at 822; *Twyman,* 855 S.W.2d at 621; *Benavides*, 848 S.W.2d at 195.

We sustain Staggs's first issue.

### IV. FACTUAL SUFFICIENCY CHALLENGE TO THE JURY'S NO LIABILITY FINDING AGAINST THE SIMPERS

#### A. Staggs's Conversion Claim

In his second issue, Staggs asserts that the jury's failure to find the Simpers liable for conversion was against the great weight and preponderance of the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242. In order to establish liability for the conversion of personal property, a plaintiff must prove that: (1) it owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Greater Houston German Shepherd Dog Rescue, Inc. v. Lira,* 447 S.W.3d 365, 372 (Tex.

10

App.—Houston [14th Dist.] 2014, pet. filed) (citing *Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.)).

Because Staggs is attacking the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242. Staggs claims that the uncontroverted evidence at trial established that he was Cheyenne's owner, that the Simpers assumed and exercised dominion and control over Cheyenne when they tied her to a fence post, and that he was damaged when she was killed. *But see Lira,* 447 S.W.3d at 372 (requiring the claimant prove an unlawful taking).

While Staggs did put on evidence supporting the above facts, he failed to put forth any evidence that the Simpers acted *unlawfully* or without authorization in regard to their detention of Cheyenne, though he bore the burden of proof on the issue. *See id.* In fact, there was evidence before the jury to allow them to find that the Simpers were not acting unlawfully or without authorization when restraining Cheyenne. Witnesses testified that the grand jury returned a "no bill" on an animal cruelty charge as to the Simpers. It is also uncontroverted that Cheyenne was on the Simpers's property when Thomas shot her, and the Simpers testified that they played no role in bringing Cheyenne to their property. Staggs bore the burden of proof on the issue and he failed to put forth any evidence that the Simpers's actions were in any way unlawful. *See id.* Without any evidence that the Simpers's action was unlawful, the jury's finding that no conversion had taken place was reasonable and was not against the great weight and preponderance of

11

the evidence. *See Dow Chem. Co.,* 46 S.W.3d at 242.

Staggs has not demonstrated that the adverse finding of no conversion is against the great weight and preponderance of the evidence. *See id.* We overrule Staggs's second issue.

### B. Staggs's Negligence Claim

The jury did not find the Simpers negligent in shooting Cheyenne. "The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex. 1995).

By his third issue Staggs complains that this finding is against the great weight and preponderance of the evidence. *See id.* Staggs challenges the breach of duty element and contends that the Simpers breached the duty of reasonable care by shooting Cheyenne instead of taking other actions available to them such as calling the police or calling the animal shelter.

At trial, Debbie and Thomas both testified that Cheyenne continued to show aggression after fatally wounding Puppy and after being tied to a fence post. The jury, in its role as the finder of fact, made a determination that the Simpers's conduct did not breach any duty of reasonable care after hearing the evidence admitted during trial. *See Dow Chem. Co.,* 46 S.W.3d at 242. The jury could have based their "no" answer to Staggs's negligence claim on a determination that Simper acted reasonably in putting down an aggressive "wolf dog" with a history of violence. *See id.* After reviewing the record we do not find that the evidence is so weak or that the jury's finding is so against

the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id.*

We overrule Staggs's third issue.[8]

### V.    CONCLUSION

We reverse the trial court's judgment on Debbie's claim of intentional infliction of emotional distress and render a take nothing judgment.   We affirm the remainder of the judgment.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
28th day of May, 2015.

---

[8] Because we have determined that the jury's determination that the Simpers were not negligent was supported by the evidence, we do not reach Staggs's fourth and fifth issues regarding his gross negligence and malice questions.   *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 748–49 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (the difference between gross negligence and malice is of degree, rather than kind); *Shell Oil Co. v. Humphrey,* 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (negligence is a prerequisite for a finding of gross negligence); *Alvarez v Driscoll Found. Children's Hosp.,* No. 13-98-152-CV, 2000 WL 35729205, at *2 (Tex. App.—Corpus Christi Dec. 7, 2000, pet. denied).