**Kelcie WAGGONER, Appellant**

v.

**Janet Duffey MORROW and James Morrow, Appellees**

No. 14–94–00530–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 27, 1996.

David Waddell, Houston, Edward L. Bamblett, Houston, Robert T. Alexander, Houston, for appellant.

Jimmy Phillips, Jr., Angleton, Joe Silvas, Clute, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

In this declaratory judgment action, Kelcie Waggoner appeals a take-nothing judgment entered in favor of Janet Duffey Morrow and James Morrow (collectively, the "Morrows") on the grounds that the trial court erred (1) by failing to determine the Morrows had constructive notice of an easement that had been created by reservation, (2) by failing to find an easement by estoppel, necessity, prescription, or implication, (3) by failing to find that the existing roadway was on the Morrows' property, (4) by concluding that an April 7, 1992 correction deed is valid and not a cloud on title, and (5) by concluding that Morrow purchased the property free of an easement. We reverse and remand.

## Background

In 1977 Waggoner and her husband partitioned a parcel of property that had formerly been Lots 6, 7 and 8 of the J.N. Kincaid Subdivision in the Shubal Marsh Survey. The partition created thirteen numbered tracts of which the northernmost tract closest to the county road was numbered tract 13, and the southernmost tract was numbered tract 1 (collectively, the "Waggoner tracts"). The partition survey [1] also set forth the metes and bounds description of a 60–foot wide roadway easement for the existing road which provided access from tract 1 across each of the other tracts to the county road.[2] Although the partition survey specified the boundaries of the 60–foot easement, it did not show the location of the existing road within that easement. Nor was the partition survey ever recorded in the real property records of Brazoria County.

Three years later, in 1980, the Waggoners had gift deeds prepared for their children and grandchildren. The gift deeds were supposed to reflect the tracts and roadway easement as set forth in the partition survey. However, the survey was never recorded.

In December of 1980 and January of 1981, respectively, the Waggoners made two conveyances of undivided one-half interests in tract 2 by gift deeds [3] to their daughter, Gail Waggoner Goolsby Freeze ("Goolsby"), so that Goolsby then owned all of tract 2, a 5.32 acre parcel. In each of these recorded gift deeds, the property conveyed to Goolsby is described as follows:

An undivided one-half (1/2) interest in and to a 5.32 acre tract being Tract 2 of an unrecorded partition of Lots 6, 7 and 8 of the J.N. Kincaid Subdivision,[ [4] ] out of the Shubal Marsh Survey, Abstract 81–82, Brazoria County, Texas and being more particularly described by metes and bounds on Property Exhibit attached hereto and incorporated herein for all purposes.

The gift deeds further provide:

IT IS UNDERSTOOD AND AGREED that out of the property hereby conveyed, there is excepted and reserved unto GRANTORS, their heirs and assigns, the

---

1. This partition survey was Waggoner's trial exhibit A, and was proven up by the surveyor who prepared it.

2. Waggoner understood that the easement was made 60 feet wide because of "county specs," and that the 60 feet extended 30 feet on each side of the center of the road. Similarly, the surveyor who drew the plat for the tracts stated that the easement was made sixty feet wide because that was "the minimum requirement in Brazoria County in the event that road is ever taken into the system." However, the surveyor did not testify how the easement was actually drawn relative to the existing road, i.e., whether it extended 30 feet on each side the center of that road at all points or any point.

3. The tracts were given in half-interest increments for reasons of federal gift tax law.

4. Lots 6, 7 and 8 of the J.N. Kincaid Subdivision, collectively, is the property that the Waggoners subdivided, and is not to be confused with tracts 6, 7, and 8 created by the Waggoners' partition of that property.

free and uninterrupted use, liberty and easement of passing in and along a certain passageway or road across and the free and uninterrupted use, liberty and easement for utility and drainage purposes along and across that portion of the 60 foot road easement described in Exhibit "A" attached hereton [sic], which crosses the above described 5.32 acre tract.

Exhibit "A" attached to the deed states:

> ... [a] 60 foot road easement out of Lots 6,7, and 8 of the J.N. Kinkaid[5] Subdivision ... Brazoria County, Texas, and by metes and bounds described as follows....

However, the metes and bounds description which follows on exhibit A of these gift deeds describes only the portion of the roadway easement that passes through tracts 6 through 13, and contains no metes and bounds description of a roadway easement through tracts 1 through 5.

In November of 1985, Goolsby sold the easternmost 1.10 acres of tract 2 to Janet M. Duffey who, upon marriage, later became Janet Duffey Morrow. In Morrow's deed from Goolsby, the property conveyed was described as follows:

> TRACT 1: A 1.10 acre tract of land out of a 5.32 acre tract known as Lot 2 of the Partition of Lots 6, 7 and 8 of the J.N. Kinkaid Subdivision in the Shubal Marsh Survey, Abstract 81 and 82, Brazoria County, Texas; and being more particularly described by metes and bounds on Exhibit A, attached hereto and incorporated herein and
>
> TRACT 2: The uninterrupted right to use a 60 foot road easement out of Lots 6, 7 and 8 of the J.N. Kinkaid Subdivision out of the Shubal Marsh Survey, Abstract 81 and 82, Brazoria County, Texas, and being

more particularly described on Exhibit B, attached hereto and incorporated herein for all purposes.

Exhibit B to this deed contained the same metes and bounds description of the easement as that contained in Goolsby's deeds, and, thus, also did not specify the location of the easement in tracts 1–5. As a result, at the time Morrow purchased her property, the property records contained no metes and bounds description of a roadway easement on tract 2.

Separating Goolsby's portion of the tract from that of Morrow was the existing 12–15 foot wide dirt road which had gone across tract 2 before it was divided. This was the only road from the county road to Morrow's property. At the time she purchased the property, Morrow understood that her parcel extended to the center of this road, and that she could not block it.

In 1987, when the omission of the metes and bounds description of the roadway easement for tracts 1–5 was discovered, the attorney who prepared the original deeds sent a letter explaining the situation with correction warranty deeds to the owners of those tracts, including Goolsby and Morrow (the "correction deeds"). These correction deeds included a metes and bounds description of the 60–foot wide roadway easement in accordance with the original partition survey for the tracts. Based on advice she received from the local title company that this easement did not affect her property, Morrow signed the correction deed. However, her correction deed was never recorded because Goolsby refused to sign both her own correction deed from the Waggoners and her correction deed to Morrow.[6]

---

5. The spelling of this name, "Kincaid" and "Kinkaid," varies among the documents.

6. In an earlier lawsuit in the same trial court, a judgment was entered establishing the location of the roadway easement for tracts 1–5. The location of that easement was *based* upon the original easement, but was revised to reflect the "accumulation of recorded documents to that point in time." The survey prepared pursuant to the judgment showed that a fence and roping pen located on the Morrows' property were with-

in the roadway easement. Moreover, contrary to the title company's alleged advice in 1987 that the easement reflected in the correction deed would not affect the Morrows' property, the boundaries of the easement defined by the earlier judgment, as marked off on the ground by the surveyor, occupied most of the Morrows' front yard and came within several feet of her house. However, the parties and trial court all acknowledge that the Morrows are not bound by that judgment and survey since they were not parties to that lawsuit.

Thereafter, Morrow put up a new fence which did not block the road, but was allegedly within the 60–foot easement. When Morrow declined Waggoner's request to move it, Waggoner filed this suit in February of 1992 against the Morrows and Goolsby seeking, among other things, declaratory judgment that the Morrows are subject to the 60–foot easement the Waggoners sought to reserve in the partition survey.

On April 7, 1992, after this lawsuit was filed, but before trial, Goolsby and Morrow entered into a second deed (the "1992 deed") in which Goolsby conveyed the same 1.10 acre tract of land, but with a 60–foot road easement which ran along the west boundary of that tract. This deed allegedly shifted the easement claimed by Waggoner to the west so that it fell on Goolsby's property and occupied little, if any, of Morrow's property.

On November 29, 1993, this case was tried to the court, and on February 16, 1994, the trial court entered a take-nothing judgment in favor of the Morrows and Goolsby.[7] The judge also made the following findings of fact and conclusions of law:

#### Findings of Fact

1. At the time the Defendant, JANET DUFFEY MORROW, purchased her land, there was not recorded in the Brazoria County, Texas deed records any specifically described easement upon the land of the Grantor, Gail Goolsby.

2. That Gail Goolsby sold only a portion of the land she owned and acquired under deed, and thereafter, never restricted the Grantor of her original deed from access across the remainder tract on the existing passageway.

3. That the existing traveled portion of the passageway was not on the tract of land which was sold to JANET DUFFEY MORROW.

4. That the existing traveled portion of the passageway at the time that JANET DUFFEY MORROW bought her land was and could be contained within a sixty (60) foot wide strip of land without using any of the land purchased by JANET DUFFEY MORROW.

5. JANET DUFFEY MORROW, and her husband, JAMES MORROW, were not parties to the judgment on May 30, 1989.

6. The Plaintiff failed to present sufficient proof to show by legal description that the existing traveled portion of the passageway was within the boundaries of the land purchased by JANET DUFFEY MORROW.

7. That the Plaintiff failed to show that the existing passage way was not contained within the described sixty (60) foot easement mentioned in the Correction Deed from Gail Goolsby to Janet Duffey Morrow on April 7th, 1992.

8. That at the time she purchased the land from Gail Goolsby, JANET DUFFEY MORROW did not have notice that the land she purchased was subject to any specific easement.

#### Conclusions of Law

1. The Defendants, JANET DUFFEY MORROW and her husband, JAMES MORROW, were not bound by any judgment which set forth the metes and bounds of the sixty (60) foot easement reserved to Grantors when they gave the land to Gail Goolsby.

2. JANET DUFFEY MORROW purchased title to her land free of any easement mentioned in the deeds to Gail Goolsby.

3. That the Correction Deed of April 7th, 1992, is valid and is not a cloud on title.

In her eight points of error, Waggoner challenges some but not all of the trial court's findings of fact and conclusions of law.[8] We therefore begin with a recitation of the applicable standards of review.

---

7. Goolsby is not a party to this appeal.

8. As we interpret Waggoner's points of error, findings of fact 1, 2 and 5, and conclusion of law 1 are unchallenged.

## Standards of Review

### Findings of Fact

■ Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). Challenged findings of fact have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The evidence supporting them is thus reviewable for legal and factual sufficiency by the same standards as evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994).

■ In reviewing a legal insufficiency or "no evidence" point of error, the reviewing court considers only the evidence and inferences that tend to support the challenged findings and disregards all evidence and inferences to the contrary. *Id.* A finding will be upheld if more than a scintilla of evidence supports it. *Id.* More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995).

■ In reviewing a factual sufficiency point of error, the appeals court must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). Findings of fact may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* In that event, the appeals court must state clearly why the finding is factually insufficient or so against the great weight and preponderance as to be manifestly unjust. *Id.*

### Conclusions of Law

■ The trial court's conclusions of law are always reviewable. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* Incorrect conclusions of law will not require reversal, however, if the controlling findings of fact will support a correct legal theory. *Id.*

### Notice

In her first point of error, Waggoner argues that the trial court erred in failing to find that Morrow was on constructive notice of the easement.[9] More specifically, Waggoner contends that (1) a 60-foot road easement was reserved in the Waggoners' deed to Goolsby, (2) Morrow was on constructive notice of it at the time of her purchase by the reference in her deed to a road easement, by the reservation of record of an easement in Goolsby's deed and by the physical presence of the road, and (3) because of this constructive notice, Morrow had a duty to investigate the location of the road easement relative to her property.[10] Had Morrow satisfied this duty, according to Waggoner, she would have discovered the partition survey of the 13 tracts and the metes and bounds description of the easement across them, including tract 2. Similarly, in her eighth point of error, Waggoner contends that the trial court erred in concluding that Morrow purchased her land free of any easement mentioned in the deeds to Goolsby. Morrow does not dispute that Waggoner reserved a road easement across tract 2, but only disputes that this easement is located within the 1.10 acres deeded to her.

As a general rule, an instrument relating to real property which is not recorded in the deed records of the county in which the property is located is binding on the parties

---

9. Although not specified in Waggoner's brief, we interpret this point of error to challenge finding of fact 8 and conclusion of law 2.

10. Waggoner further claims that events subsequent to Morrow's purchase, such as a 1989 letter she wrote to the Waggoners' lawyer, evidence her knowledge that the easement was located 30 feet on each side of the center of the existing road. However, we find no indication in those subsequent materials as to whether she possessed any such knowledge at the time of her purchase.

thereto and their heirs, and on a subsequent purchaser who has notice of the instrument. TEX. PROP. CODE ANN. § 13.001(b) (Vernon 1984). Such an instrument is not binding on a subsequent purchaser for valuable consideration who has no notice of the instrument. *Id.* § 13.001(a) (Vernon Supp.1996). An instrument that is properly recorded is notice to all persons of the existence of the instrument. *Id.* § 13.002 (Vernon 1984).

 It is well settled that a purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by an instrument which forms an essential link in the chain of title under which he claims. *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.1982). The rationale of this rule is that any description, recital of fact, or reference to other documents in an instrument puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. *Id.*

In this case, Morrow's original deed from Goolsby describes her property as being part of lot 2 of the "Partition of Lots 6, 7 and 8 of the J.N. Kinkaid Subdivision" and plainly refers to a 60–foot road easement out of those former lots. In addition, the Waggoners' recorded deed to Goolsby also refers to the unrecorded partition and specifically recites that the 60–foot road easement crosses tract 2.

 Since the Partition of Lots 6, 7 and 8 of the Kinkaid Subdivision created the tract from which Morrow's property was divided, that Partition is an essential link in the chain of title to Morrow's property and Morrow is charged with a duty of inspecting it. *See id.* at 908. The Partition referred to in the deeds consists of the partition survey prepared for the Waggoners in 1977, which sets forth the boundaries of the road easement throughout the Waggoner tracts, including tract 2. The fact that the Partition was unrecorded, as recited in Goolsby's deeds, does not diminish Morrow's duty to inspect the Partition where Morrow did not contend

that she had been unable to obtain a copy of it upon diligent search and inquiry. *See id.* Therefore, Morrow is charged with knowledge of the Partition and the description therein of the easement as it might relate to her portion of tract 2.

Having determined that Morrow's property would be subject to the easement set forth in the Partition *if* it occupies any of that property, we next consider whether there is evidence in the record that it does so. According to the property description in Morrow's original deed, her northern boundary extends 165.19 feet west from her eastern boundary, which was also the eastern boundary of tract 2 before it was divided to create Morrow's lot. According to the partition survey, the road easement at the northern end of tract 2 begins 134.87 feet west of the eastern boundary of tract 2. Therefore, there is evidence that Morrow's northern boundary extends into the road easement a distance of 30.32 feet, the difference between 165.19 feet and 134.87 feet.

Similarly, according to Morrow's property description, her southern boundary extends 105.46 feet west from her eastern boundary. According to the partition survey, at the southern end of tract 2, the road easement begins 74.94 feet west of the eastern boundary. Thus, there is evidence that Morrow's southern boundary extends into the road easement a distance of 30.52 feet, the difference between 105.46 feet and 74.94 feet. Moreover, we have found no evidence that the original road easement fell outside the boundaries of Morrow's portion of tract 2. Accordingly, we sustain points of error one and eight.

### Remaining Points

Having so determined that an easement existed by reservation of which Morrow had notice, we need not address points of error two through five which alternatively assert the existence of an easement by estoppel, necessity, prescription, or implication. Nor is it necessary to consider point of error six in which Waggoner claims that the trial court erred in finding that the actual *road* was not on Morrow's property since, having found

evidence that the *easement* was partly on her property, the location of the road does not affect the application of that easement to Morrow's property.

In her seventh point of error, Waggoner argues that the trial court erred in concluding that the 1992 deed is valid and not a cloud on the title of the easement. We sustain this point of error to allow the trial court to consider the validity and effect of the 1992 deed in light of our conclusion that Morrow's property was subject to the easement created by reservation in the original conveyance of the tracts by the Waggoners.

Accordingly, we conclude that the trial court's take-nothing judgment against Waggoner was in error, and that Waggoner is entitled to a declaratory judgment that the Morrow's property is subject to the easement set forth in the partition survey. Therefore, we reverse the judgment of the trial court and remand the case for further proceedings in accordance with this opinion.