TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00620-CV






Austin Steel Framing Systems, Appellant



v.



Jim Nodler and Sandra Nodler, Appellees







FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 21,784, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING 







 Jim and Sandra Nodler employed Austin Steel Framing Systems to erect a steel frame for
their custom-built house. Unhappy with Austin Steel's performance, the Nodlers issued a stop-work order
to Austin Steel and used other labor to finish the work. (1) Austin Steel sued for payment due under the
contract for work completed. The Nodlers counterclaimed for their cost of repair and completion. In a
bench trial, after offsets, the trial court awarded $6,665 to Austin Steel, substantially less than its claim of
$25,426. Austin Steel appeals from that judgment. We will modify the judgment and affirm it as modified.

The Controversy



 Austin Steel and the Nodlers entered into a contract by which Austin Steel agreed to
provide materials and labor to build the exterior frame and the interior wall frame for the Nodlers' planned
house. The framing was to be steel. The contract price was $56,513, to be paid in three draws: 
$19,600.00 in advance for steel framing material; $18,456 on completion of the exterior walls; and
$18,457 on substantial completion of the entire contract.

 The Nodlers grew concerned about the quality of Austin Steel's work and issued a stop-work order. Austin Steel continued to work for nine more days. When the Nodlers refused to pay the
draw due for completion of the exterior walls (second phase) plus the payment for the days worked after
the stop-work order, Austin Steel filed a mechanic and materialmen's lien on the Nodlers' property to
secure its claim for $25,426. After a bench trial, the court allowed Austin Steel a net recovery of $6,665,
rather than its claim for $25,426.


Offsets for Repair


 In point of error one, Austin Steel contends that there was insufficient evidence to support
the trial-court judgment. Under this point of error, Austin Steel attacks the findings on the amount of offset
from the contract price allowed to the Nodlers for repair and completion of the frame.

 If a party is attacking the factual sufficiency of an adverse finding on an issue on which he
did not have the burden of proof, he must demonstrate that there is insufficient evidence to support the
adverse findings. When deciding an insufficiency point, we must consider and weigh all of the evidence and
should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see
generally William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence," 69 Tex. L. Rev. 515 (1991).

 The trier of fact is the judge of the credibility of the witnesses. One of the complicating
factors in this cause is that the use of steel framing in a residence is unusual. Because few companies in the
Central Texas area elect steel framing in residential projects, there were few witnesses competent to
describe industry standards. Most of the testifying witnesses either were employees of Austin Steel or had
some interest in the project. The court's findings appear to have given the most credibility to the two
witnesses who were the most neutral.

 Austin Steel questions the offsets allowed for repairs based on Austin Steel's assertions
that the Nodlers caused the problems. The trial court found that Austin Steel had breached the contract
by failing to perform in a good and workmanlike manner. Austin Steel does not challenge the trial court's
findings that Austin Steel failed to perform in a competent manner, that Austin Steel breached the contract,
and that the Nodlers did not. Unchallenged findings of fact are binding on an appellate court unless the
contrary is established as a matter of law or there is no evidence to support the finding. McGalliard v.
Kuhlman, 722 S.W.2d 694, 696 (Tex. 1986); Waggoner v. Morrow, 932 S.W.2d 627, 631 (Tex.
App.--Houston [14th Dist.] 1996, no writ). As detailed below, the trial court had testimony that work
done by Austin Steel was defective, which implies that Austin Steel caused the problems that necessitated
repairs. The court had more than a scintilla of evidence to support these unchallenged findings. We
therefore move to a consideration of the reasonableness of the repair work performed.

 Austin Steel's major complaint is that there was not sufficient evidence to support the trier
of fact in finding that the repairs to the structure were necessary. See GATX Tank Erection Corp. v.
Tesoro Petroleum Corp., 693 S.W.2d 617, 619 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). 
Although the Nodlers' questions concerning the remedial work were not always framed in terms of
necessity, most were presented in terms of whether an item they had repaired had been defectively
constructed by Austin Steel. A reasonable interpretation of testimony that an item was defectively
constructed is that, in that witness's opinion, correcting the defect was necessary, as the alternative would
seem to be endangering the project.

 A contractor experienced in steel construction, Tom Gibbs, testified about the necessity
and reasonableness of repairs. He inspected the job site for several hours to determine whether he would
bid to finish it. He testified about the need for wind bracing and about other items, such as bowed trusses,
that needed repair. He testified that it would have taken a $10,000 down payment and working on a cost-plus basis after that point for him to "get interested" in finishing the Austin Steel contract. (2) Ten thousand
dollars was more than the eventual offset amount of $8,522. An engineer testified as to the necessity of
the wind bracing. An employee of Austin Steel, who had worked on the project for a while independently
of Austin Steel, testified concerning the work he had done--some he considered remedial, some new. The
owner of Austin Steel testified as to the lack of necessity of the work that others had done and to the
unreasonableness of the amounts.

 The court had before it conflicting evidence concerning the necessity and reasonableness
of the amount to allow for offsets. The amount eventually allowed was supported by sufficient evidence. 
We overrule point of error one.


Amount Owed Before Allowance for Repairs



 In point of error two, Austin Steel attacks the judgment as being against the great weight
and preponderance of the evidence. Austin Steel had the burden of proof to establish the amount claimed
under the contract. Austin Steel attacks the court's award of an amount less than the contract price for the
second phase ($18,456) plus the charge for the extra nine days ($6,970).

 Neither side clearly sets out the measure of damages used, but neither argues that the
wrong standard was used, so we will follow their formula. Each used some variation of the contract price
through the second phase minus offsets. Austin Steel claims it should be compensated for the full second
phase contract price, plus the additional days worked after the stop-work order. Austin Steel contends
that the evidence established this as the award due before any deductions. However, the only evidence
in the record as to the propriety or necessity of the work performed by Austin Steel came from its owner. 
Further, the court found that the contract allowed for a stop-work order, thus the stop-work order was
not a breach of contract. The court had evidence that any work continuing after the stop work-order was
not authorized under the contract and should not be included in the contract price. This evidence supports
the court's decision to award nothing for the days worked after the stop-work order.

 The Nodlers contend that the second-phase contract price pro-rated at 83% completion,
should be the amount due under the contract. An appraiser working for the lender appraised the work
done at the time that Austin Steel claimed its second draw at only 83% complete. The only evidence in
the record concerning the second-phase price came from Mr. Nodler's testimony that the amount due was
83% of the price in the contract, or $14,979. That testimony is the source of the court's computation of
the contract price before offsets. However, the $14,979 amount is apparently the result of a miscalculation,
as 83% of $18,456 is $15,318. Accordingly, the proper damages amount should have been $15,318
minus the offset amount of $8,522, resulting in a judgment for Austin Steel of $6,996. We sustain Austin
Steel's second point of error to the degree that we correct a miscalculation in the percentage of completion
as applied to the second-phase draw under the contract. We overrule the rest of the point.

 Accordingly, we modify the judgment and as modified, affirm.



 

 B. A. Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Modified and, as Modified, Affirmed

Filed: February 20, 1998

Do Not Publish
1. The Nodlers did not employ a general contractor. Instead, they employed the services of a
"construction consultant," Texas Help-You-Build, to assist them in performing the functions of a general
contractor. Laborers hired directly by the Nodlers performed some of the work to complete the framing.
2. Due to the extensive amount of work and the press of other business, Gibbs declined to bid on
performing the work for the Nodlers.



nstructed is that, in that witness's opinion, correcting the defect was necessary, as the alternative would
seem to be endangering the project.

 A contractor experienced in steel construction, Tom Gibbs, testified about the necessity
and reasonableness of repairs. He inspected the job site for several hours to determine whether he would
bid to finish it. He testified about the need for wind bracing and about other items, such as bowed trusses,
that needed repair. He testified that it would have taken a $10,000 down payment and working on a cost-plus basis after that point for him to "get interested" in finishing the Austin Steel contract. (2) Ten thousand
dollars was more than the eventual offset amount of $8,522. An engineer testified as to the necessity of
the wind bracing. An employee of Austin Steel, who had worked on the project for a while independently
of Austin Steel, testified concerning the work he had done--some he considered remedial, some new. The
owner of Austin Steel testified as to the lack of necessity of the work that others had done and to the
unreasonableness of the amounts.

 The court had before it conflicting evidence concerning the necessity and reasonableness
of the amount to allow for offsets. The amount eventually allowed was supported by sufficient evidence. 
We overrule point of error one.


Amount Owed Before Allowance for Repairs



 In point of error two, Austin Steel attacks the judgment as being against the great weight
and preponderance of the evidence. Austin Steel had the burden of proof to establish the amount claimed
under the contract. Austin Steel attacks the court's award of an amount less than the contract price for the
second phase ($18,456) plus the charge for the extra nine days ($6,970).

 Neither side clearly sets out the measure of damages used, but neither argues that the
wrong standard was used, so we will follow their formula. Each used some variation of the contract price
through the second phase minus offsets. Austin Steel claims it should be compensated for the full second
phase contract price, plus the additional days worked after the stop-work order. Austin Steel contends
that the evidence established this as the award due before any deductions. However, the only evidence
in the record as to the propriety or necessity of the work performed by Austin Steel came from its owner. 
Further, the court found that the contract allowed for a stop-work order, thus the stop-work order was
not a breach of contract. The court had evidence that any work continuing after the stop work-order was
not authorized under the contract and should not be included in the contract price. This evidence supports
the court's decision to award nothing for the days worked after the stop-work order.

 The Nodlers contend that the second-phase contract price pro-rated at 83% completion,
should be the amount due under the contract. An appraiser working for the lender appraised the work
done at the time that Austin Steel claimed its second draw at only 83% complete. The only evidence in
the record concerning th