**Affirmed and Memorandum Opinion filed August 11, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00212-CV

---

### TCHEWAM LILY MUKWANGE, Appellant/Cross-Appellee

### V.

### PUBLIC STORAGE, INC., Appellee/Cross-Appellant

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-45830**

---

## M E M O R A N D U M   O P I N I O N

Appellant/cross-appellee Tchewam Lily Mukwange sued appellee/cross-appellant Public Storage, Inc. for the unlawful conversion of the contents contained in her storage unit. The trial court signed a judgment in Mukwange's favor and awarded her $5,000 in damages. In several issues, Mukwange contends that the trial court erred by concluding that there was insufficient evidence to support her claim for fraud and that she was only entitled to recover $5,000 in damages. In a

cross-appeal, Public Storage asserts that the evidence is legally insufficient to support Mukwange's damages, and in the alternative, the trial court properly limited Mukwange's damages to $5,000. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2011, Mukwange began renting a self-storage unit at a Public Storage facility, located at 9811 North Freeway, Houston, Harris County, Texas. Mukwange agreed to pay $30.00 per month rent, due on the first day of each month. Late charges of $20.00 per month became due if rent was not paid by the sixth day of the month. As of April 30, 2011, Mukwange's balance due to Public Storage was $0.

Mukwange testified that on April 30, 2011, she dropped a money order in the mail slot of a different Public Storage facility, located at 6336 Fairdale Lane, Houston, Texas. Mukwange stated that the money order was in the amount of $60.00 and was intended to cover rent for May and June. Mukwange testified that she had paid Public Storage in this manner on previous occasions. On that same day, Mukwange placed the money order receipt in her storage unit.

Public Storage claimed that it had no record of ever receiving Mukwange's money order and on May 8, it began calling Mukwange to inform her that her rent was past due. On June 1, Public Storage sent Mukwange the statutorily required notice of claim. The notice of claim was sent to the address that Mukwange provided in her lease agreement. On July 27, Public Storage auctioned the contents of Mukwange's storage unit.

On several occasions, Mukwange attempted to notify Public Storage that she had paid rent for May and June. Mukwange wrote Public Storage a letter, explaining the situation and also met with several employees in-person. On July

12, Mukwange received an invoice from Public Storage indicating that her balance was $205.00. The following day, Mukwange went to the Public Storage facility and paid $30.00 in cash for July rent. Mukwange did not pay the associated late fee. An employee explained that this payment would not stop the auction from proceeding. On July 27, Public Storage auctioned the contents of Mukwange's storage unit to the highest bidder at a public sale. The unit sold for a total of $105.19.

Appearing pro se, Mukwange filed suit against Public Storage, claiming that it breached the lease agreement and wrongfully sold her property. Public Storage filed a motion for partial summary judgment, seeking for the enforcement of a limitation of liability clause in the lease agreement. On September 3, 2013, the trial court granted Public Storage's motion for partial summary judgment and ruled that Mukwange's recovery of actual damages, if any, would be limited to $5,000.00. The parties proceeded to a bench trial, in which the trial court ruled in Mukwange's favor. On March 7, 2014, the trial court issued a final judgment and findings of fact and conclusions of law. The trial court found that Public Storage breached the lease agreement and caused Mukwange to suffer damages in the amount of $5,000.00.

### ISSUES AND ANALYSIS

Because Mukwange is proceeding as pro se, we will liberally interpret the issues raised in her brief. However, we recognize that in Texas, pro se plaintiffs are held to the same standards as those applied to attorneys. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184−85 (Tex. 1978). To do so otherwise could give a pro se litigant an unfair advantage over litigants represented by counsel. *Id*. at 185. Here, our liberal interpretation of the issues raised by Mukwange results in two basic complaints—specifically, that the trial court erred by finding that she failed

3

to prove fraud and erred by limiting her damages to $5,000.

In a cross-appeal, Public Storage asserts that the evidence is legally insufficient to support the trial court's award of damages.

## I.     Fraud

In several issues, Mukwange contends that (1) she properly pleaded a fraud claim, not a breach of contract claim; (2) the trial court erred by only ruling on her breach of contract claim, instead of her fraud claim; and (3) the trial court erred by finding that she presented insufficient evidence of fraud. Mukwange asserts that because she sufficiently pleaded and proved fraud by a preponderance of the evidence, she was entitled to exemplary damages and damages for mental anguish.

Mukwange asserts that the trial court erred by ruling on a breach of contract claim because she did not bring suit under a theory of breach of contract. Mukwange's original petition states that "Public Storage acted in violation of Texas Property Code sections 59.042, 59.043, 59.044, and 54.042, and thus breached its rental agreement with plaintiff." In its findings of fact, the trial court stated that "[t]he petition does not clearly define the causes of action under which relief is sought but Ms. Mukwange testified that she was suing for breach of contract and conversion." The trial court concluded that Mukwange brought suit under theories of conversion and breach of contract only. The lease agreement was admitted without objection at trial and discussed in detail. When viewing Mukwange's original petition and the testimony at trial, the trial court properly concluded that Mukwange brought a breach of contract claim. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617−18 (Tex. 1986); *see also Kline v. O'Quinn*, 874 S.W.2d 776, 788 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("In determining whether an action is in tort or in contract, we must look to the substance of the cause of action, not the manner in which it was pleaded.").

4

Mukwange also complains that the trial court erred by finding that she did not plead a claim for fraud. The trial court's conclusions of law stated the following:

> Although the Court does not find that Ms. Mukwange pled a claim for fraud, if her petition is construed to include such a claim, Ms. Mukwange did not present sufficient evidence to justify a finding of fraud by a preponderance of the evidence. Specifically, Ms. Mukwange did not present evidence of a material, false representation made by Public Storage that Public Storage knew to be false or that Public Storage made recklessly without knowledge of the truth.

We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143−44 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ).

Assuming without deciding that Mukwange pleaded a claim for fraud, the record reflects that Mukwange did not present sufficient evidence to justify a finding of fraud. Mukwange claims that Public Storage committed fraud by sending her an invoice on July 12, 2011, in which Public Storage informed her that her balance due was $205.00. Mukwange argues that the invoice is a material representation because it "makes no mention of a possible auction or ongoing auction process." Mukwange asserts that she relied on the invoice and believed that it was an extension of grace provided in response to the letter she sent Public Storage in June.

A cause of action for fraud requires (1) a material misrepresentation; (2) which was either known to be false when made or was asserted without knowledge of its truth; (3) was made with the intention that it be acted upon by the other party; (4) the other party acts in reliance upon it; and (5) the other party suffers harm as a

5

result of that reliance. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Fraud requires a showing of actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In evaluating justification, the court considers whether, given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part. *Id*. One may not justifiably rely on a representation when there are "red flags" indicating that such reliance is unwarranted. *See id*.

Michelle England, a district manager for Public Storage, testified about Public Storage's policies for handling accounts with delinquent rent. England stated that after sending the July 12 invoice, Public Storage informed Mukwange several times that her partial payment of rent would not prevent the auction from proceeding. England testified that on July 15 and July 19, Public Storage explained to Mukwange that she still had a balance due on her account and that they were going to auction the contents of her storage unit. Mukwange admitted that when she went to Public Storage on July 15, an employee told her that her property may still be auctioned. Thus, Mukwange cannot show that she relied on the invoice as a representation that the auction had been cancelled because Public Storage notified her that the auction would continue to proceed. Because Mukwange cannot show that she relied on any alleged material misrepresentation in the invoice, Mukwange cannot prove that the evidence was sufficient to support her fraud claim. The trial court properly concluded that Mukwange did not present sufficient evidence to justify a finding of fraud by a preponderance of the evidence. *See Waggoner*, 932 S.W.2d at 631 ("We will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports.").

We overrule Mukwange's issue.

## II. Damages

In a cross-appeal, Public Storage contends that Mukwange failed to present any evidence of damages, or in the alternative, that the evidence is legally insufficient to support the trial court's award of damages. Mukwange asserts that the trial court erred by ruling that her damages were limited to $5,000.

### A. The Evidence is Legally Sufficient to Support the Trial Court's Award of Damages

Public Storage asserts that Mukwange failed to present any evidence of damages at trial, or alternatively, that Mukwange presented insufficient evidence at trial to support the trial court's award of damages.

In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 77 S.W.3d 253, 262 (Tex. 2002).

The trial court has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). Generally, the measure of damages to personal property is "the difference in its market value immediately before and immediately after the injury, at the place where the damage occurred." *Thomas v. Oldham*, 895 S.W.2d 352, 359 (Tex.

1995). Market value is defined as the amount that a buyer who desires to buy but is under no obligation to buy, would pay to a willing seller who desires to sell but is under no obligation to sell. *City of Pearland v. Alexander*, 483 S.W.2d 244, 247 (Tex. 1972). However, not all property has a "market value." *Gulf States Utils. Co.*, 79 S.W.3d at 566. The Texas Supreme Court has recognized "that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term." *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex. 1963). Therefore, the measure of damages that should be applied to household property is the actual value of the property to its owner for use in the condition in which it was at the time of the injury. *Id*. at 329 ("Where property, such as household goods and wearing apparel, has no recognized market value, the actual value to the owner must be determined without resort to market value.").

In determining actual value to the owner, the trial court may consider the original cost, replacement cost, opinions of qualified witnesses, the property's use, and any other reasonably relevant facts. *Gulf States Utils. Co.*, 79 S.W.3d at 566. A property owner may testify about the value of her personal property. *Id*.

Mukwange testified at trial that the contents in her storage unit contained her "life-long properties" and that she "stored everything [she] owned" in the unit. Mukwange stated that she valued her coin collections and stamp collections and that the unit contained literary work she had written and a family photo album. Further, an exhibit was admitted into evidence at trial which consisted of a series of communications between Mukwange and Public Storage. Mukwange's email to Public Storage explained that the storage unit contained her literary works, legal documents, certificates, books, work tools, children's clothing and toys, and her clothing. The record reflects that Mukwange presented evidence showing that the storage unit contained household items and personal effects. *See Crisp*, 369

8

S.W.2d at 329 (noting that "household furniture, family records, wearing apparel, personal effects, and family portraits" are examples of property held for the comfort and well-being of the owner); *Dearman v. Dutschmann*, 739 S.W.2d 454, 455 (Tex. App.—Corpus Christi 1987, writ denied) ("Personal effects are defined to mean articles of personal property bearing intimate relation or association to [the] person. Generally considered as personal effects are clothing, jewelry, and similar chattels.") (Internal quotations and citations omitted). As owner of the property, Mukwange was allowed to testify as to the value of her personal property. *See Gulf States Utils. Co.*, 79 S.W.3d at 566 (stating that when measuring damages for household goods, "[i]t is well settled that a property owner may opine about the property's value").

Mukwange testified that she believed her property was worth $100,000.00 and that her literary work was worth $75,000.00. In reaching these values, Mukwange stated that she browsed stores online to determine what the replacement costs for the goods would be. *See Allstate Ins. Co. v. Chance*, 590 S.W.2d 703, 704 (Tex. 1979) (holding that the factfinder may consider replacement costs to determine the actual value to the owner). She explained that the values were very conservative and low-end estimates for her property.

The trial court awarded Mukwange $5,000.00 in damages but stated that he believed her items were worth more than that amount. Because Mukwange testified on the value of her property and the trial court awarded an amount within that range of evidence presented at trial, the evidence is legally sufficient to support the trial court's value determination.

We overrule Public Storage's cross-point.

9

## B. The Trial Court Properly Limited Mukwange's Damages

Mukwange contends that the trial court erred by limiting her actual damages to $5,000.00.

A general measure of damages is subject to any agreement that the parties might have made with respect to damages because parties to a contract are free to limit or modify the remedies available in the event of a breach of the contract. *GT & MC, Inc. v. Tex. City Refining, Inc.*, 822 S.W.2d 252, 256 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *see also Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App.—Fort Worth 2005, no pet.) ("In the absence of a controlling public policy to the contrary, contracting parties can limit their liability in damages to a specified amount."). Here, the lease agreement reflects that the parties agreed to limit their liability in damages to a specified amount.

The lease agreement provides that "Occupant agrees that under no circumstances will the aggregate value of all personal property stored in the Premises exceed, or be deemed to exceed $5,000 and may be worth substantially less than $5,000." The lease agreement also contains a limitation of liability clause, stating:

> Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is caused by owner's fraud, willful injury or willful violation of the law . . . Occupant agrees that Owner's and Owner's Agent's total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.

Mukwange initialed this paragraph and testified at trial that they looked like her initials.

Mukwange argues that the trial court erred by limiting her damages because she proved fraud. However, as we have discussed above, Mukwange did not present sufficient evidence for a fraud claim. Thus, the trial court properly limited her damages to $5,000.00, the amount provided in the lease agreement.

## CONCLUSION

We overrule Mukwange's issues and Public Storage's cross-point and affirm the judgment of the trial court.


/s/    Ken Wise
Justice


Panel consists of Justices Christopher, Donovan, and Wise.

11