**AFFIRMED and Opinion Filed May 3, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00288-CV**

_____

**DAVID MU, Appellant**
**V.**
**GIA TRAN, Appellee**

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2021-07175**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Carlyle, and Garcia
Opinion by Justice Garcia

Appellant David Mu appeals from a lifetime protective order rendered against him. We overrule his four issues on appeal and affirm the order.

## I. Background

In February 2021, appellee Gia Tran filed an application for protective order against Mu in Harris County district court. Her attached declaration stated that she and Mu had previously been involved in a dating relationship. In her application, Tran alleged that Mu had committed family violence and that there were reasonable

grounds to believe that she was a victim of stalking by Mu. The trial judge issued a temporary protective order and show cause order against Mu.

Mu appeared pro se at the protective-order hearing. After the hearing, at which Tran and Mu both testified, the trial judge signed a protective order that, among other things, prohibits Mu from communicating with Tran except through an attorney of record or a person appointed by the court. The order states that it shall continue in effect for Mu's lifetime.

Mu requested findings of fact, which the trial judge later issued. Mu then requested additional or amended findings. The trial judge did not act on this request.

Mu appealed. The appeal was assigned to the Houston Fourteenth Court of Appeals and then transferred to this Court by the Texas Supreme Court.

## II.   The Law Governing Protective Orders

Tran's application for protective order invoked both the Family Code and Chapter 7B of the Code of Criminal Procedure, but only Chapter 7B is pertinent to the issues Mu raises on appeal.

Code of Criminal Procedure Chapter 7B, Subchapter A, authorizes protective orders to protect victims of certain criminal conduct, including stalking. *See* TEX. CODE CRIM. PROC. art. 7B.001(a)(1). In a protective-order proceeding under Subchapter A, the essential fact issue is "whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking." *See* Act of May 21, 2019, 86th Leg., R.S., ch. 469, 2019 Tex. Gen.

–2–

Laws 1065 (amended 2021) (current version at CODE CRIM. PROC. art. 7B.003(a)). "If the court finds that there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking, the court shall issue a protective order that includes a statement of the required findings." *Id*. art. 7B.003(b). A protective order issued under Article 7B.003 may be effective for the duration of the lives of the offender and the victim or for any shorter period stated in the order. *Id*. art. 7B.007(a).

We note that Chapter 7B was passed in 2019, and it replaced and recodified prior Chapter 7A, which was repealed. *See Sharp v. Jimmerson*, No. 01-20-00360-CV, 2021 WL 3624712, at *1 n.1 (Tex. App.—Houston [1st Dist.] Aug. 17, 2021, no pet.) (mem. op.). Chapter 7B took effect January 1, 2021, shortly before Tran filed her application for protective order in this case. *See id*. Additionally, in 2021 the legislature amended Chapter 7B with amendments that went into effect September 1, 2021, and thus do not apply to this case.

### III.   Analysis

**A.   Issue One: Did the trial judge err by not issuing additional findings of fact?**

In his first issue, Mu argues that the trial judge erred by not granting Mu's request for additional findings of fact. We disagree for the following reasons.

Under Rule 298, a trial judge should make additional findings of fact only if they have some legal significance to an ultimate issue in the case. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255 (Tex. App.—Houston [14th

–3–

Dist.] 1999, pet. denied). "Additional findings and conclusions are not required if they are merely evidentiary, or aimed at tying down the court's reasoning rather than its conclusions." *Stuckey Diamonds, Inc. v. Harris Cty. Appraisal Dist.*, 93 S.W.3d 212, 213 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "When a party is not prevented from properly presenting its case to the court of appeals, the failure to file findings and conclusions is harmless." *Harris Cty. v. Ramirez*, 581 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Here, the trial judge made findings of fact both in its protective order and in separate findings of fact and conclusions of law. Mu's request for additional findings of fact contained six specific requests, which fall into two categories.

Five of Mu's requests asked the trial judge to find additional "specific and identifiable facts" to support the more general findings already made by the court. For example, Mu's request number two asked, "What specific and identifiable facts from the record were used to support the finding of Stalking as defined by Texas Penal Code § 42.072 (a)(1)-(3)?" These five requests are requests for evidentiary findings that the trial court was not required to make. *See Stuckey Diamonds*, 93 S.W.3d at 213; *Dura-Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex. App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.) (trial court that made broad-form findings on elements of strict products liability was not obliged to make additional "evidentiary" findings stating the evidence by which the elements were proved).

Accordingly, the trial judge did not err by failing to make additional findings pursuant to these five requests by Mu.

Mu's sixth request asked, "What section of Article 7B did the court proceed under in issuing this protective order?" On appeal, he argues that this request was proper because the trial judge's findings and conclusions mistakenly cite repealed Chapter 7A of the Code of Criminal Procedure. For the following reasons, however, we conclude that Mu was not harmed by this mistake or the trial judge's failure to correct it.

As Mu points out, conclusion number 5 in the trial judge's findings and conclusions erroneously recites as follows: "The Court finds that there are reasonable grounds to believe that Applicant is the victim of Stalking and the Respondent has engaged in conduct towards Applicant as described in Texas Penal Code Sections 42.072 (Stalking), 42.07 (Harassment), and **Chapter 7A** of the Texas Code of Criminal Procedure." (Emphasis added.) However, the correct statute, Chapter 7B, was referenced previously throughout the proceedings. Tran's application for protective order alleged, "[T]here are reasonable grounds to believe the Applicant is a victim of STALKING by the Respondent, TCCP Chapter 7B." During the hearing, the trial judge mentioned that Chapter 7A had been recodified as Chapter 7B. And the protective order itself cites Chapter 7B in its express finding on the stalking allegation: "The Court finds there are reasonable grounds to believe the Applicant is a victim of STALKING by the Respondent, TCCP Chapter 7B."

We conclude that Mu was fully apprised that the trial judge was acting under the anti-stalking provisions of Chapter 7B.

We further conclude that the mistaken reference to Chapter 7A in the findings and conclusions is merely a mistaken conclusion of law—an error about the law authorizing trial judge to issue a protective order, not about the facts of the case. Incorrect conclusions of law do not require reversal if the controlling fact findings support a correct legal theory. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ). Because the trial judge's fact findings support the issuance of the protective order under Chapter 7B (specifically Article 7B.003), and because the record as a whole shows that Mu was apprised of the legal bases for the proceeding, we conclude that Mu has not been prevented from presenting his appeal and thus has not been harmed by the error in conclusion number 5. *See Harris Cty.*, 581 S.W.3d at 427; *see also* TEX. R. APP. P. 44.1.

We overrule Mu's first issue on appeal.

**B.    Issue Four: Is the evidence factually insufficient because the trial judge's findings and conclusions do not support the protective order?**

Mu's fourth issue, like his first issue, relies on the trial judge's conclusion of law number 5, which mistakenly cites repealed Chapter 7A of the Code of Criminal Procedure instead of the applicable law, Chapter 7B. Mu argues that, under Texas Rule of Civil Procedure 299a, the mistaken reference in conclusion number 5 controls over the correct reference to Chapter 7B in the protective order itself. He

–6–

concludes that the mistaken citation to Chapter 7A means there is not a sufficient finding or conclusion to support a stalking protective order under Chapter 7B.

We disagree with Mu's argument. Under Article 7B.003, a stalking protective order shall issue if the trial judge finds that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking," and the protective order shall state that finding. CODE CRIM. PROC. art. 7B.003(b). Here, both the protective order and conclusion number 5 in the trial judge's separate findings and conclusions recite that there are reasonable grounds to believe that Tran is the victim of stalking by Mu. Thus, the trial judge made the fact finding necessary to support an Article 7B.003 protective order. As stated in our analysis of Issue One, the reference to Chapter 7A is not a conflicting finding of fact but rather amounts to an erroneous conclusion of law about the legal authority for the protective order. An erroneous conclusion of law does not require reversal if the fact findings support the judgment under a correct theory. *See Waggoner*, 932 S.W.2d at 631.

The cases Mu cites for support are distinguishable. For example, in *Sharp v. Jimmerson*, the trial court issued a protective order under former Chapter 7A but found that there were reasonable grounds to believe that the applicant was a victim of criminal harassment—not criminal stalking. 2021 WL 3624712, at *5. Because Chapter 7A required a finding of reasonable grounds to believe that the applicant was a victim of stalking, the finding of harassment was insufficient to support the protective order, and the court of appeals reversed. *Id*. Here, by contrast, the trial

judge made the finding required by Article 7B.003—that there are reasonable grounds to believe that Tran was a victim of stalking by Mu. Thus, *Sharp* is not on point. The other cases cited by Mu are similarly distinguishable. *See Taylor v. Taylor*, 608 S.W.3d 265, 272 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (reversing family-violence protective order for lack of essential finding); *Maldonado v. Bearden*, No. 01-17-00371-CV, 2018 WL 4087411, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 28, 2018, no pet.) (mem. op.) (same).

We overrule Mu's fourth issue.

**C.  Issue Two:  Was Mu denied due process and due course of law because the trial judge was biased against him?**

In his second issue, Mu argues that the trial judge's comments, conduct, and rulings show that she was biased against him to the point that he was denied a fair trial. We disagree for the following reasons.

First, we note that Mu argues that he was not required to preserve error. However, in the context of a jury trial, the supreme court has held that a judicial-bias complaint based on comments or conduct must be preserved unless the error is not curable by instruction. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The Fourteenth Court of Appeals, whose precedents are controlling in this case, *see* TEX. R. APP. P. 41.3, has applied the *Dow Chemical* rule to a bench trial, *see Jacquot v. Coker*, No. 14-20-00123-CV, 2022 WL 1180138, at *11 (Tex. App.—Houston [14th Dist.] Apr. 21, 2022, no pet. h.) (mem. op.) ("But '[i]n the context of a bench trial, if the error is incurable, courts excuse a party's

–8–

failure to object.'") (citation omitted) (appeal from protective order). Thus, we may sustain Mu's issue only if the trial judge's error was incurable.

A party has a right to a fair trial before an impartial judge. *Jacquot*, 2022 WL 1180138, at *11. A judge should be neutral and detached, neither advocate nor adversary. *Id*. However, a trial judge has broad discretion in determining how to conduct a trial, and she may properly intervene to maintain control in the courtroom, expedite the trial, and prevent what she considers to be a waste of time. *Dow Chem*., 46 S.W.3d at 240–41. Thus, only in the rarest circumstances will judicial rulings show favoritism or antagonism to the degree necessary to demonstrate that the trial was not fair or the judge was not impartial. *Jacquot*, 2022 WL 1180138, at *11. Critical, disapproving, and even hostile remarks ordinarily will not suffice to show reversible bias or partiality. *See id*. Reversible bias is established if the trial judge's conduct showed a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id*.

We summarize the incidents at the protective-order hearing about which Mu complains as follows:

- The judge admitted Tran's declaration into evidence over Mu's objection that statements in it were embellished or untrue. When Mu asked why his objection was not a legal objection, the judge told him not to interrupt her and said that she was not required or allowed to explain the matter to him.

- When Mu attempted to object to another exhibit, the judge interrupted him twice and then admitted the exhibit.

–9–

- When Mu later objected to another exhibit, the judge admitted it with the comment, "That's not a legal objection."

- When Tran offered some emails into evidence, the judge asked if Mu had any objection. Mu responded, "May I ask a question, Your Honor?" The judge answered, "No, you may not. Do you have a legal objection to Applicant's 8? Yes or no? Applicant's 8 is admitted."

- After Tran rested, the judge addressed Mu, saying, "Please tell me, based on what I've heard from the applicant, why I should not grant this protective order." Mu asked if he could ask some questions, and the judge said, "No, sir. This is not the time for questions. This is your time to tell me why I should not grant this protective order."

- Mu began testifying in a narrative fashion, and when he asserted that it was "not beyond a reasonable doubt" that he had harassed Tran, the trial judge interrupted him, told him that the burden of proof was a preponderance of the evidence rather than beyond a reasonable doubt, and explained that the preponderance standard meant that she was deciding which party was "more true than untrue."

- Mu then asked, "You asked which is more untrue?" The judge answered, "No, no. I just—I'm just telling you it's not a reasonable doubt standard. That's not what I base things on. What else do I need to know?" Then the judge asked Mu some specific questions about the facts of the case.

- After a few questions and answers, the trial judge said, "Oh my goodness. Mr. Mu, what was your degree in college." After he replied that he "did information systems," the judge said, "Okay. You are a pretty smart guy. Don't play games with me. Don't play word games and don't try playing mind games. That's ridiculous."

- Then the trial judge asked Mu what he had to do "to get the case dismissed over in criminal court." During the subsequent back-and-forth between Mu and the judge, the judge interrupted him once, asked him a leading question about whether he had had to take a "battering intervention and prevention course," and soon

thereafter said, "Okay. All right. I'm ready to rule," without asking if Mu was finished.

- The judge granted a lifetime protective order even though Tran had asked for "[a]bout five years" and ordered Mu to pay court costs and $900 in attorney's fees. She also required him to attend a B.I.P.P. course.

- At the end of the hearing, the judge said, "Ms. Tran, if you need anything else, please let [the State's attorney] know, okay?"

Tran argues that Mu has not shown reversible bias, and we agree.

With respect to the trial judge's handling of Mu's objections and attempts to ask questions during Tran's testimony, we conclude that Mu has not shown that the judge's conduct showed bias. Pro se litigants are held to the same standards as attorneys, *Brown v. Tex. Emp't Comm'n*, 801 S.W.2d 5, 8 (Tex. App.—Houston [14th Dist.] 1990, writ denied), and the record does not show that trial judge's enforcement of that principle in this case was unreasonable. To take one example, Mu suggests that the trial judge refused to allow him to voir dire Tran about her proffered exhibit 8. The record shows that the judge asked Mu if he had a legal objection to that exhibit and he responded, "May I ask a question, Your Honor?" Thus, Mu did not clearly ask to question Tran, and the trial judge could have understand instead that Mu wanted to ask the judge something. The judge's refusal to entertain Mu's question was within the zone of her discretion to conduct the hearing expeditiously.

The trial judge also acted within her discretion during Mu's presentation. Although Mu characterizes her invitation at the outset to "tell [her] why [she] should

not grant this protective order" as "a curious and aggressive tone" revealing her bias, it can be viewed as a reasonable instruction to help a pro se litigant get quickly to the merits of the case, well within the judge's broad discretion to manage the trial. The judge's interruption of Mu's presentation to instruct him regarding the applicable burden of proof also fell within her broad discretion.

As for the judge's questioning of Mu, Mu cites by analogy the rule that jurors may not question witnesses in criminal cases. *See Morrison v. State*, 845 S.W.2d 882 (Tex. Crim. App. 1992). That rule is not on point. In a bench trial, a trial judge may question witnesses to clarify facts on issues that she must decide in fulfilling her role as factfinder. *See Sklar v. Sklar*, 598 S.W.3d 810, 825 (Tex. App.—Houston [14th Dist.] 2020, no pet.). After reviewing the record, we conclude that the judge's questioning was directed to relevant issues in the case and did not demonstrate bias or prejudice against Mu. And although the judge did suggest at one point that Mu might be playing "word games" or "mind games," even hostile remarks generally do not suffice to show reversible bias or prejudice. *Jacquot*, 2022 WL 1180138, at *11.

Although the trial judge did bring the evidence to a close rather abruptly, nothing in the record suggests that Mu had additional evidence to present. The judge entered a protective order for a longer term than Tran requested, but, considering the evidence of violence adduced during the hearing, we cannot say that this one of those "rarest" cases in which a judicial ruling shows such antagonism as to demonstrate that the trial was unfair. *See id*. Nor are the orders regarding attorney's fees, court

–12–

costs, and a B.I.P.P. class, or the judge's final remark to Tran that she could seek additional help from the State's attorney, so unreasonable as to demonstrate improper bias.

Even considering all of the incidents collectively, we cannot conclude that the trial judge's conduct showed such a deep-seated favoritism or antagonism as to make fair judgment impossible. *See id*. Accordingly, we overrule Mu's second issue.

**D.      Issue Three: Was Mu denied the constitutional right to be heard?**

Mu's third issue argues that the trial judge denied him his constitutional right to be heard, specifically his right to put on evidence. We disagree for the following reasons.

First, we conclude that Mu did not preserve error. Mu's complaint centers on the trial judge's conduct during his case in chief. The trial judge allowed Mu to testify briefly in narrative form and then cut him off and asked him several questions. Then she announced that she was "ready to rule" and proceeded to do so. Thus, Mu's presentation takes up only about three and half pages of the reporter's record. However, Mu said nothing when the judge said that she was ready to rule. He neither objected nor said that he had more evidence to present. Thus, he did not preserve error. *See* TEX. R. APP. P. 33.1; *see also In re F.E.N.*, 542 S.W.3d 752, 768 (Tex. App.—Houston [14th Dist.] 2018) ("Due process violations must be raised in the trial court for them to be preserved on appeal."), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (per curiam).

Alternatively, even if Mu was not required to object to preserve error, we conclude that he has not shown a due-process violation. The right to due process guarantees the right to a full hearing before a court having jurisdiction of the matter, the right to introduce evidence at a meaningful time and in a meaningful manner, and to have judicial findings based on the evidence. *Derbigny v. Bank One*, 809 S.W.2d 292, 295 (Tex. App.—Houston [14th Dist.] 1991, no writ). It also includes an opportunity to produce and cross-examine witnesses, to be heard on questions of law, and to have judgment rendered after trial. *Id.*

Mu does not dispute that the trial judge invited him to question Tran and the State's attorney who testified about attorney's fees. He declined both times. During his case in chief, Mu testified both in narrative form and in response to the judge's questions. Although the judge did not ask Mu if he rested before announcing that she was ready to rule, nothing in the record suggests that he had any additional evidence he wanted to present at that point. In sum, the record does not show that Mu had additional evidence that the judge prevented him from presenting.

Mu relies principally on *Striedel v. Striedel*, 15 S.W.3d 163 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.), for support. We conclude that *Striedel* is distinguishable. *Striedel* was also an appeal from a protective order, but in that case (1) the trial judge cut the defendant off while he was cross-examining the applicant and (2) the defendant told the trial judge that he had other evidence and had not been allowed to testify. *Id.* at 166. The trial judge nevertheless granted the protective order

–14–

without allowing the defendant to put on any more evidence. *Id*. Not surprisingly, the court of appeals held that the trial court abused its discretion by depriving the defendant of the right to offer evidence. *Id*. In this case, by contrast, the record does not show that Mu had any additional evidence to present when the trial judge announced that she was ready to rule. Thus, *Striedel* is inapposite.

We overrule Mu's third issue on appeal.

## IV.  Conclusion

Having overruled all of Mu's issues on appeal, we affirm the trial court's protective order.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210288F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DAVID MU, Appellant

No. 05-21-00288-CV     V.

GIA TRAN, Appellee

On Appeal from the 280th District
Court, Harris County, Texas
Trial Court Cause No. 2021-07175.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Carlyle
participating.

In accordance with this Court's opinion of this date, the trial court's protective order is **AFFIRMED**.

It is **ORDERED** that appellee Gia Tran recover her costs of this appeal from appellant David Mu.

Judgment entered May 3, 2022.